JAMES T. PATTERSON *vs.* THE FARMINGTON STREET RAILWAY COMPANY ET AL.

Third Judicial District, New Haven, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In an action against several defendants, one of them, a nonresident, pleaded to the jurisdiction, alleging, first, that the action was purely *in personam,* and that no service had been made upon him in this State nor any property of his attached; and second, that no order had been made by the court, judge, or clerk, in regard to the notice which should be given to him, as such nonresident, of the institution or pendency of the complaint. To the first part of this plea the plaintiff demurred, substantially upon the ground that the action was one *in rem,* and denied the allegations of the second part respecting the want of an order of notice. The trial court found the issue of fact for the plaintiff, but adjudged that the action was purely personal and abated it as to said defendant. Thereupon the resident defendants demurred to the complaint for substantial and radical defects, and their demurrer was sustained. *Held : —*

1. That the legal effect of the judgment abating the action as to the nonresident defendant was simply to eliminate him as a party in so far as the action was directed against him personally, but that such judgment did not affect the plaintiff's right to press the action as a proceeding *in rem* touching any interest which such nonresident, or the other defendants, might have in the property which was the subject of the proceeding.

2  That inasmuch as the complaint was properly held to be wholly insufficient to sustain a judgment *in rem*—the only judgment open to the plaintiff upon his theory of the cause of action alleged—the earlier ruling could not have harmed him, even if erroneous.

An action to adjust equitable interests in the stock of a Connecticut corporation, and to compel the registry on its books of the legal

title, as determined by the court, is in the nature of a proceeding *in rem*, and is maintainable, against property within the jurisdiction of the court, upon giving all persons interested therein reasonable notice in the manner prescribed by law.

A court cannot enforce the specific performance of an agreement whose terms, as alleged, are indefinite and uncertain.

The allegations of the complaint in the present case reviewed and *held* not to set forth with sufficient certainty any agreement which the court could specifically enforce in the manner prayed for by the plaintiff.

An option-contract transfers no property interest in its subject-matter to the holder of the option, nor does it give rise to the trust relation between him and the owner of the property which is said to exist between vendor and vendee pending payment and delivery.

One who has an option to purchase a block of the mortgage bonds of a street railway company whose property is foreclosed and sold pending the exercise of his option, cannot enforce the contract by requiring a delivery to him of shares of stock in a new company which was organized by the purchasers at the foreclosure sale to take over and operate the property thus purchased ; at least without alleging facts which show that such stock was derived from, or attached to, the ownership of the bonds, or had some necessary relation thereto. The mere fact that the bondholder was one of the purchasers at the foreclosure sale and that the property so purchased was transferred to the new company, is immaterial.

Where the very terms of an offer limit the time within which it must be accepted, or upon which payments must be made to keep it alive, time is the essence of the contract, and a promise of the obligor, after its expiration, to extend it, is not binding unless supported by a new consideration.

The trial court having sustained a demurrer to the complaint for substantial defects, may properly refuse to allow an amendment which does not obviate them.

Argued January 28th—decided April 15th, 1904.

ACTION to enforce the rights of the plaintiff under an option-contract for the purchase of certain bonds of a Connecticut street-railway company, and for an injunction, brought to the Superior Court in Fairfield County and abated (*Gager, J.*), upon a plea to the jurisdiction, as to one of the two nonresident defendants; afterwards a demurrer to the complaint filed by the other defendants was sustained, *Thayer, J.*, and judgment rendered for the defendants, from which the plaintiff appealed. *No error.*

The foundation of this action is an agreement between the plaintiff and the defendant Coykendall and others made June 2d, 1898. The other parties to the agreement assigned their interest to the plaintiff, and for the purposes of this case he and the defendant Coykendall may be treated as the sole parties.

The agreement is as follows : " Memorandum of agreement made this 2d day of June, 1898, by and between S. D. Coykendall, of the City of Kingston, in the State of New York, of the first part, and J. T. Patterson, Charles M. Henney, David Henney and William F. Henney, parties of the second part: The party of the first part hereby gives to the parties of the second part the right to purchase at their option one hundred and thirty-five of the present issue of the first mortgage bonds of the Hartford and West Hartford Horse Railroad Company, for the sum of eighty-one thousand dollars ($81,000), at any time within two years from date, payments therefor to be made as follows : (1) $1,000 at this date, receipt of which is hereby acknowledged ; (2) $4,000 on the first day of August, 1898; (3) the balance of said $81,000 on or before two years from the date of this instrument. (4) The parties of the second part agree to make the payments of $1,000 and $4,000 above specified, and in addition to pay interest on the whole sum of $81,000 from the first day of April, 1898, to the first day of August, 1898, and thereafter to pay interest at the rate of five per cent. per annum, semiannually, on the whole of said principal sum remaining unpaid at the date when such interest becomes due ; interest, however, to terminate whenever within said period of two years the bonds are purchased and entirely paid for according to the terms of this agreement, and all unpaid coupons belonging to such bonds are included in this option, and are to pass with the bonds when purchased and paid for as herein provided. (5) Should a new issue of bonds, in substitution for those already outstanding, be made by said Railroad Company, the party of the first part agrees to take, in lieu of the 135 bonds herein mentioned, bonds of such new issue to the amount of 3/7 of such issue in lieu of said 135 bonds,

and to hold such new bonds subject to the terms of this option. It is understood and agreed, however, that said Coykendall shall not be required to exchange the bonds he now holds for those of a new issue of bonds until the balance of the 315 bonds of the present issue have been exchanged. Should the parties of the second part fail to make promptly any payment for interest herein provided for, all payments theretofore made shall upon such failure be forfeited, and this option shall thereby terminate."

The action is brought to enforce the plaintiff's rights growing out of this agreement, and four persons are made defendants, viz., Coykendall and Soop, residents of New York, Greeley, a resident of Connecticut, and the Farmington Street Railway Company, a Connecticut corporation. Actual service within the State was made upon Greeley and the railroad corporation. No service was made upon Coykendall and Soop, but a copy of the writ and complaint addressed to each of them at Kingston, N. Y., was mailed to each in pursuance of an order of notice.

The first three paragraphs of the complaint, as amended, allege that on June 2d, 1898, Coykendall owned 135 of the $1,000 first mortgage bonds of the Hartford and West Hartford Horse Railroad Company, being three-sevenths of the whole amount of that issue (315 bonds), and on that day the above option-contract between him and the plaintiff was executed, whereby the plaintiff obtained a right and option to purchase of Coykendall 135 of the bonds mentioned therein, for the sum of $81,000, at any time within two years from the date thereof, according to the terms set forth therein; that the plaintiff duly performed all the obligations imposed upon him by said contract, except that he did not make the payment due on August 1st, 1899, and setting forth in detail the circumstances claimed as a legal excuse for not making that payment; that on June 1st, 1900, the plaintiff tendered to Coykendall the amount of the agreed price of said bonds, and demanded the transfer thereof, but said Coykendall refused to transfer the same.

The remaining seven paragraphs allege that on March 3d,

1899, an action was commenced by the treasurer of the State—the trustee named in a deed of trust executed by said Hartford and West Hartford Horse Railroad Company, which conveyed to the State treasurer all the rights, property and franchises of said company to secure the payment of said 315 bonds—and such proceedings were had that upon August 1st, 1899, all the rights, property and franchises of said company were sold, and were purchased by said Coykendall, Soop and Greeley; that immediately upon said purchase they organized the Farmington Street Railway Company as a joint-stock corporation, to take over the property so purchased, with a capital stock of $189,000, divided into 1,890 shares of the par value of $100 each; that Coykendall, intending to prevent the consummation of said option-contract and avoid his obligations thereunder, caused a transfer of the property so purchased to be made to the Farmington Street Railway Company; that said Coykendall, Soop and Greeley subscribed for all the shares of the Farmington Street Railway Company, each subscribing for 630 shares; that Coykendall, Soop and Greeley purchased said bonds as trustees for the bondholders, and subscribed to said stock as trustees for the benefit of the persons entitled to said bonds; that the plaintiff was entitled to the bonds so agreed by Coykendall to be transferred to him, and so entitled to three sevenths of the stock so subscribed for by Coykendall, Soop and Greeley, trustees, to wit, to 810 shares; that the plaintiff is entitled to said 135 bonds, and offers to pay Coykendall all that is due him under said option-agreement, and if said stock has taken the place of said bonds, the plaintiff is also entitled to said stock; that the plaintiff has no adequate remedy at law; that no issue of certificates of stock has been made, and the plaintiff fears that Coykendall, Soop and Greeley are intending to transfer said stock so as to prevent his obtaining his due portion thereof, and that the Farmington Street Railway Company will allow such transfer to be made on its books.

The complaint asks by way of equitable relief a decree ordering the delivery to the plaintiff of 135 of said bonds,

or the transfer to him of 810 shares of said stock; an injunction restraining said Coykendall, Soop and Greeley from transferring their stock so as to deprive him of his rights; an injunction restraining the Farmington Street Railway Company from allowing such transfer to be made on its books; and such other and further relief as is due in the premises.

The defendant Coykendall filed a plea to the jurisdiction, and the court adjudged that the action abate as to him. He did not otherwise appear. Soop did not appear.

The defendants Greeley and the Farmington Street Railway Company each filed a demurrer to the complaint, which the court sustained and rendered judgment in favor of the demurring defendants.

The appeal assigns error in the rendition of the judgment on the plea to the jurisdiction, in the rendition of the judgment on the demurrers, and in disallowing an amendment to the complaint.

*Charles E. Perkins* and *Howard H. Knapp*, for the appellant (plaintiff).

*Edward D. Robbins*, for the appellees (defendants).

HAMERSLEY, J. The claims of the plaintiff are based on two transactions and assume a sort of common-law marriage between the two, whereby the property rights incident to the first are transferred to or merged in the second. A reliance upon this assumption, without stating facts which justify it, accounts for the vagueness and uncertainties of the complaint, and constitutes its radical defect.

The first transaction centers in the option-contract of June 2d, 1898, between the plaintiff and the defendant Coykendall. Upon the allegations relating to this transaction, the plaintiff claims that on June 1st, 1900, there was a completed contract of sale between Coykendall and himself, which Coykendall has refused to execute, and the plaintiff

seeks under this complaint a specific performance by Coykendall of that contract of sale, namely, the delivery to him by Coykendall, in exchange for their purchase price, of 135 of the 315 bonds issued by the Hartford and West Hartford Horse Railroad Company (hereinafter called the West Hartford Company).

The other centers in a sale of all the property and franchises of the West Hartford Company, under an order of court in an action brought to foreclose the mortgage given by said company to secure the payment of its bonds, which sale took place August 1st, 1899 ; in the purchase at that sale of the mortgage property by the defendants Coykendall, Soop and Greeley ; the subsequent organization of the defendant, the Farmington Street Railway Company ; and the acquirement, through subscription, of all its capital stock by Coykendall, Soop and Greeley, each acquiring one third thereof—630 shares.

The plaintiff claims that the allegations of the complaint relative to this transaction establish an agreement on the part of Coykendall, Soop and Greeley, whereby, in making said purchase, they acted in behalf of persons then owning bonds of the West Hartford Company, and in acquiring the capital stock of the Farmington Street Railway Company they acted for the benefit of such persons, and acquired three sevenths—810 shares—of said stock for the benefit of the plaintiff. Whereupon the plaintiff asks specific performance of the trust agreement thus set forth, namely, the transfer to him of 810 shares of the 1,890 shares, of which Coykendall, Soop and Greeley now hold individually the legal title ; an injunction *pendente lite*, restraining all the defendants from acts affecting the ownership of the stock or the title thereto ; and ancillary relief against the defendant corporation, by way of compelling it to afford the facilities, and do the acts, necessary to effectuate the principal relief asked against the other defendants.

Assuming that the allegations relative to the second transaction can be held to state a definite trust agreement by the terms of which, as stated, Coykendall, Soop and Greeley ac-

quired and now hold the legal title to all the stock of the Farmington Street Railway Company in trust to transfer the same to persons who are, by the terms of said agreement, the equitable owners thereof—of whom the plaintiff is one and the equitable owner of 810 shares—and to state facts sufficient to show that action by the corporation, under direction of the court, is necessary to settling the ownership and establishing the title of the parties to the trust agreement in accordance with its terms,—we think the plaintiff is entitled to bring an action to which the trustees, the *cestui que trust*, and the defendant corporation, may be made parties, and that notice given to nonresident defendants, in pursuance of the statute prescribing notice in such case, is sufficient to justify the Superior Court in adjudicating the rights of the parties in the stock of the defendant corporation, for the purpose of settling the title and requiring the corporation to give the aid necessary, under the laws of this State, to invest the true owners with the legal title to the property ; and that the judgment of the court will be binding upon nonresident defendants' interest in the property which is the subject of the judgment, whether or not they enter an appearance in pursuance of the notice. *Roller* v. *Holly*, 176 U. S. 398, 406 ; *Bennett* v. *Fenton*, 41 Fed. Rep. 283, 288.

The capital stock of the defendant corporation is property which exists only by virtue of the laws of this State ; property which, by force of the law creating it, can only be transferred on the books of the company in this State ; this is true notwithstanding certificates of shares of stock in many business corporations have some of the qualities of negotiable instruments, and are treated for some purposes as property. This capital stock as property is subject to liens, —statutory liens in favor of the corporation itself, mortgages liens, and liens created by contract. Conditions may arise under which such liens cannot be effectually enforced, securing the rights of all persons interested in the property, unless by the courts of this State. Our statutes provide for the citation of nonresidents interested in this property,

when our courts are called upon to settle its title, and the mode of giving them notice is prescribed.

We cannot doubt that an action calling upon our courts to enforce equitable liens, adjust equitable interests in such property, and to compel the registry on the books of the company of the legal title in the owner of the property, as determined by the court, is in the nature of a proceeding *in rem*, which justifies a court, in a proceeding against property within its jurisdiction, in binding all persons with respect to their interest in that property, upon giving them reasonable notice in the manner prescribed by law, and is fully consistent with the principle recognized in *Pennoyer* v. *Neff*, 95 U. S. 714.

But even if the allegations relative to the second transaction could be held to state a good cause of action to which all the defendants are properly made parties, it nevertheless remains true that the allegations relative to the first transaction state a different cause of action against the defendant Coykendall alone. Upon trial the plaintiff might abandon all his claims under the second transaction, or the court might find his averments insufficient or untrue, and still judgment might be rendered against Coykendall upon proof of the allegations relative to the first transaction ; unquestionably such a judgment, unless Coykendall voluntarily appeared, would be void, because a purely personal one against a defendant who had not been served with process within the State.

The complaint, therefore, if the assumption as to the legal effect of its allegations is tenable, contains two distinct causes of action : one against Coykendall alone, and the other in the nature of a proceeding *in rem* against all the defendants. The plaintiff, however, claims, and has claimed from the beginning, that the substantial action stated in the complaint is one *in rem*, and that the averments supporting a personal action against Coykendall are merely incidental to a complete statement of the action *in rem*.

On the other hand, Coykendall claims, and has claimed from the beginning, that the action is in substance a per-

sonal one against him; that the assumption that the allegations of the complaint state the facts essential to support a proceeding *in rem* is wholly untenable; and that the allegations in respect to the second transaction affecting the other defendants are merely incidental to a statement of the personal action alleged against him; and the other defendants maintain the same claim as to the legal effect of the allegations of the complaint.

In this attitude of the parties, the defendant Coykendall entered an appearance for the limited purpose of pleading to the jurisdiction. The plea contains two paragraphs: (1) averring that the action is a purely personal action, and that process has not been served upon him within the State; (2) averring that he is a nonresident, and that the notice required by statute to be given a nonresident of the pendency of an action affecting property within the State in which he has, or claims, an interest, has not been given.

Apparently the plea was framed to meet whatever view the court might take of the complaint, substantially setting up two pleas to the jurisdiction: one averring want of personal service, if the court should hold the action to be a personal one, and the other averring want of statutory notice, if the court should hold the action to be *in rem*.

The plaintiff demurred to the first paragraph of the plea, and answered to the second. The demurrer does not except to the averment that the action is a personal one as a conclusion of law, but simply affirms the insufficiency of the averments as made, because the action is in the nature of a proceeding *in rem*, and states that statutory notice of its pendency has been duly given.

The issue thus framed, whether properly or not, is the single issue of law: do the allegations of the complaint legally state a personal action against Coykendall, or an action *in rem* affecting all the defendants? The contingency of the complaint containing a statement of both actions is not directly presented.

The answer to the second paragraph or plea admits the nonresidence of Coykendall, and denies the allegation that

statutory notice of the institution of the action has not been given.

It is evident that the issues thus presented, especially in view of the facility afforded by the Practice Act for a full statement of all matters in controversy between the parties to an action, jointly, separately, or in the alternative, and for the rendition of judgment upon any cause of action substantially stated and proved, produced a novel situation, suggestive of some doubt as to the correct course for the court in its treatment.

The court did accept the issues precisely as framed by the parties. It found the issue of law for Coykendall, holding that the complaint did not legally state facts essential to support the action as a proceeding *in rem*, and that the action was therefore in substance a personal action. It found the issue of fact for the plaintiff, and held that Coykendall had received due notice of the institution of the action, if it could be considered as a proceeding *in rem*, and adjudged that the personal action as to Coykendall abate. The plaintiff has appealed from this judgment, assigning no reason except the general claim that the court erred in rendering the judgment.

The plaintiff has suffered no injury from this judgment. After its rendition the plaintiff was entitled to press his action as a proceeding *in rem*, and, if upon trial his claims should be sustained by the court, he would be entitled by the terms of the judgment, which found that Coykendall had been duly notified of the institution of the action as a proceeding *in rem*, to as full a remedy in respect to the interest of Coykendall in any property which might be the subject of the proceeding, as if the judgment had not been rendered.

The judgment is not only harmless to the plaintiff, especially in view of the conclusion we reach in regard to the other part of the case, but is in substance a correct answer to the issues framed by the parties. In legal effect it is limited to the abatement of a personal action as against Coykendall.

In fact, after the judgment abating the personal action

against Coykendall, the plaintiff pressed and tried his alleged proceeding *in rem* against all the defendants, including the defendant Coykendall, who could not complain of the result, because he did not see fit to appear in pursuance of the legal notice the court had adjudged he received. The alleged proceeding *in rem* has been heard upon a demurrer testing the substantial merits of the alleged cause of action. The trial court, upon full hearing, has found that the facts alleged by the plaintiff are in substance insufficient to support his proceeding *in rem*, and has rendered judgment for the defendants. It is not assigned for error, nor claimed in argument, that the plaintiff has any substantial grievance not involved in the alleged error of the trial court in rendering judgment against him upon the merits of his cause of action as stated in his complaint. This is the controlling error in the appeal, and the one that has been argued before us.

We think the plaintiff is not entitled, upon the specifications of error in this appeal, to a reversal of the judgment.

After the judgment on the plea to the jurisdiction was rendered, the plaintiff filed two amendments to his complaint, and each resident defendant separately demurred to the amended complaint. The demurrers are substantially the same, and will be treated as one. Many grounds of demurrer are specified, some going to matters of form, but most of them pointing out defects so substantial that, if they exist, the complaint fails to state any cause of action against the demurring defendants, or to state any cause of action except the purely personal one against the defendant Coykendall. The judgment must stand if any substantial ground of demurrer specified is sufficient. In his memorandum of decision the trial judge specified four grounds of the demurrer as sufficient, but afterwards, as stated in argument, the court based its decision upon each ground of demurrer, sustaining the demurrer upon all the grounds. This decision was incorporated in the judgment. If it were error not to state in writing, according to § 765 of the General Statutes, all the grounds of this decision, the plain-

tiff could have suffered no harm and does not complain. He had the same opportunity to amend the substantial defects in his complaint, if they could be amended, and in fact did attempt to amend his complaint before judgment, but only in matter of form.

The only cause of action claimed by the plaintiff is one growing out of the second transaction centering in, the purchase of the property of the West Hartford Company on August 1st, 1899, and one which authorizes the court to assume control of the stock of the defendant. corporation and, through its decree, to vest, in the persons it shall find to be the equitable owners of that property, the legal title thereto. It is not claimed that the complaint states any cause of action against the demurring defendants, unless the facts as alleged therein are legally sufficient to support this one.

It is essential to the plaintiff's cause of action that he should allege that Coykendall and others made an agreement in respect to the contribution to a common fund of money for the purchase of the property of the West Hartford Company at the anticipated foreclosure sale, Coykendall to have three sevenths of the profits of the venture ; that the necessary fund was furnished and placed in the hands of Coykendall, Soop and Greeley, under an agreement by them with the plaintiff, that they would use the fund for the purchase of the property in their own names, upon a trust to carry out the terms of the two agreements.

It may be immaterial whether these agreements arise from express contract, or are necessarily implied from the facts alleged, but it is essential that their existence should be stated, and it is also essential that the terms of these agreements should be stated.

The plaintiff claims that Coykendall, Soop and Greeley, by means of the property purchased by them in pursuance of said agreements, acquired and now hold the legal title to all the stock of the Farmington Street Railway Company in trust to carry out the terms of said agreement. The plaintiff's cause of action arises upon the refusal of Coykendall,

Soop and Greeley to do this, whereby he has become entitled to a specific performance, and other relief asked in aid thereof.   It is apparent that the court cannot enforce specific performance of an agreement whose terms are indefinite and uncertain.   *Todd* v. *Diamond State Iron Co.*, 8 Hous. (Del.) 372.   The terms of an agreement, of which the specific performance is asked, are facts essential to the plaintiff's cause of action, and must be alleged.   It is incumbent on a plaintiff, seeking specific performance of an agreement, to state its terms and to prove them as stated.   *Daniels* v. *Davison*, 16 Ves. Jr. 249, 256 ; *Ellard* v. *Llandaff*, 1 Ball. & Beatty, 241, 251.   " Every fact and circumstance necessary to make out his claim must be distinctly and clearly alleged, with all convenient certainty."   *Skinner* v. *Bailey*, 7 Conn. 496, 500. We do not think the allegations of the complaint state with sufficient certainty any agreement which the court can specifically enforce in the manner demanded by the plaintiff's claimed cause of action.   But if we assume that Coykendall made an agreement with others to furnish the money for the purchase of the property of the West Hartford Company, and that Coykendall, Soop and Greeley made the purchase under a trust agreement by the terms of which they acquired the property, and subsequently acquired and now hold the stock of the defendant corporation, for the benefit of Coykendall and others, yet the plaintiff's claim that Coykendall's equitable interest in that stock equitably belongs to the plaintiff is unsupported by the allegations of the complaint, and the allegation of facts sufficient to support this claim is essential to the plaintiff's claimed cause of action.

The plaintiff's equitable right to Coykendall's equitable interest in the stock equitably belonging to Coykendall, Soop and Greeley, trustees, depends upon several facts, of which one, and an absolutely essential one, is the equitable ownership by the plaintiff, on and prior to August 1st, 1899, of 135 of the bonds of the West Hartford Company, to which Coykendall had the legal title.   This equitable ownership depends on the legal effect of the option-contract of June 2d,

1898. No claim of equitable ownership can be maintained, and none is seriously made, unless the option-contract existing at the date of the purchase of the property of the West Hartford Company made the plaintiff then the equitable owner of the bonds. The complaint affirms an equitable ownership, through an agreement to transfer the bonds to be found in the option-contract, and affirms no other equitable ownership; and counsel for the plaintiff urge in their brief that the option-contract was the equivalent of a contract of sale, and so Coykendall held the legal title to the bonds in trust for the plaintiff, the equitable owner.

A contract of sale involves an offer to buy or to sell, and an acceptance of that offer. An offer may be withdrawn before acceptance, and a bare offer is ordinarily held to be withdrawn unless accepted immediately. The offer may be accompanied by a promise not to withdraw it within a specified time. In that case it may be accepted within the time specified, before an actual withdrawal. The promise not to withdraw is without consideration and cannot be enforced. The power to withdraw an offer, or retract a promise to keep such offer open, is a valuable advantage, which may itself be the subject of sale, and an option-contract is the sale and purchase of this advantage or right belonging to the owner of the property. It is in aid of, but clearly distinct from, the contract of sale. It affects for a limited time one right incident to absolute ownership, namely, the right to sell at pleasure, but does not otherwise affect the ownership. In this, it is clearly distinct from a contract of sale. Upon a contract of sale pending payment and delivery, the vendor is said to hold his title in trust for the vendee, and the vendee holds the purchase money in trust for the vendor. *Haughwout* v. *Murphy*, 22 N. J. Eq. 531. This particular trust relation, arising from a contract of sale in respect to the property which is the subject of sale, does not result from an option-contract. *Provident Life & Trust Co.* v. *Mills*, 91 Fed. Rep. 435, 442; *Dickinson* v. *Dodds*, L. R. 2 Ch. D. 463. Such a contract gives no property interest in its subject-matter. *Waterman* v. *Banks*, 144 U. S. 394; *Bost-*

*wick* v. *Hess*, 80 Ill. 138. The contract of June 2d, 1898, is plainly an option-contract, and is so alleged by the plaintiff in his complaint.

There is another fatal omission to state facts essential to support the plaintiff's claim to an equitable interest in the stock of the defendant corporation. It is not alleged, and does not appear, that Coykendall's interest, legal or equitable, in the property purchased of the West Hartford Company was derived from, or attached to, any ownership of the bonds, legal or equitable. The most that appears is that the purchase was made by persons who happened to be owners of the bonds.

The allegations in respect to the mortgage sale are so meagre that it is impossible to affirm anything beyond what the law governing such a sale, as this seems to have been, implies. If conducted according to law, the sale was a public one open to all the world. No one person had a better or different right to purchase than any other person. A bondholder might purchase, not because he was a bondholder, but because any one could purchase. No preference could be given to any one. Collusion between the receiver, who sold the property, and the bondholders or creditors, whereby the latter might obtain it at less than its value, would be fraudulent and might avoid the sale. The only advantage a person holding the bonds could have, must arise from the better knowledge of the property he might have, and from the fact that, ordinarily, the purchaser might, at his option, use toward the payment of so much of the purchase money as is not needed for expenses of the litigation and payment of liens prior to the mortgage lien, the bonds held by such purchaser, toward the payment of which the net proceeds of such sale is legally applicable.

It is not alleged, and does not appear, whether or not the purchase price was all paid in cash and absorbed by the expenses of the litigation and the liens prior to the mortgage lien. It does appear that if Coykendall and others owning bonds may have arranged this purchase for their own benefit, the arrangement and the purchase was a transaction having

no necessary relation to the bonds, and in which the bonds played no part, except that the parties to the arrangement adopted the amount of the bonds held by each as a measure of the money each should pay, and of the interest each should have in the venture. It is obvious that no equitable interest that the plaintiff might have in Coykendall's bonds entitled him to require Coykendall to enter into any such arrangement, or to account to him for the profits of any such venture. It is also obvious that the plaintiff, whether equitable owner of the bonds or not, might himself have made the purchase or have entered into an arrangement with others, bondholders or not, for that purpose. If he desired to secure any accidental advantage that might arise from ownership of the bonds in making the purchase, he could have exercised his option under his contract with Coykendall and purchased his bonds. This he did not do. Or he could have employed Coykendall as his agent to make the arrangement he did make, furnish him with the money for that purpose, and so become entitled to his interest in the purchase. This he did not do.

The statement in the third paragraph of the complaint—inferentially made while setting forth an excuse for the nonpayment of a part of the consideration for the option-contract — that some assessment had been made against bondholders for the purchase of the property of the West Hartford Company, and that some adjustment was contemplated between the plaintiff and Coykendall in the matter of reimbursing the latter for money the latter had paid, or should pay, under the assessment, and that the plaintiff on the evening before the sale offered to pay the money involved in such adjustment, without any allegation that Coykendall ever accepted the offer, or that any money was ever paid by the plaintiff, falls far short of an averment that in his arrangement with other persons owning bonds he acted as agent of the plaintiff, or made the purchase with the plaintiff's money, or in pursuance of any agreement with the plaintiff by which the plaintiff became, either legally or equitably, entitled to Coykendall's interest in the purchase.

In the view we take of the case, the allegation that the bonds of the West Hartford Company are now outstanding uncancelled, belonging to the holders thereof and under the control of Coykendall, Soop and Greeley, trustees for the holders, has no significance favorable to the plaintiff's claim; and the affirmation in the sixth paragraph, that on August 1st, 1899, the plaintiff was by force of his option-contract entitled to the bonds then owned by Coykendall, and that these bonds to which he was so entitled are, through the subscription of Coykendall, Soop and Greeley, represented in the stock of the defendant corporation, is not well pleaded, if intended as an independent allegation of fact, and as a conclusion either of fact or of law from the facts which are pleaded, is unsound.

It is doubtful whether the facts alleged do not show that the plaintiff's option to purchase Coykendall's bonds expired on August 1st, 1899. By the terms of the contract the time within which the plaintiff might accept the offer of sale expired on August 1st, unless a stipulated payment was made on that day. The payment was not made. In such cases time is not only of the essence of the contract, but by its very terms no right of acceptance is given beyond the time limit, and after its expiration a promise of the obligor to extend the time is not binding unless supported by a new consideration. Circumstances which might relieve a party from the penalty of an ordinary forfeiture, might not relieve the obligee in an option-contract from the legal effect of his failure to accept the offer of sale, or make a stipulated payment within the time specified. *Chaffee* v. *Middlesex R. Co.*, 146 Mass. 224; *Cummings* v. *Lake Realty Co.*, 86 Wis. 382; *Waterman* v. *Banks*, 144 U. S. 394; *Potts* v. *Whitehead*, 20 N. J. Eq. 55; *Carter* v. *Phillips*, 144 Mass. 100, 102; *Harding* v. *Gibbs*, 125 Ill. 85. But it is unnecessary to discuss this question and others raised by the demurrer.

We are satisfied that the complaint does not sufficiently allege, in view of the challenge of the demurrer, facts which support a cause of action that requires the court to assume

control of the capital stock of the defendant corporation, and by its decree to settle the ownership of that stock and establish the legal title thereto in pursuance of trust agreements, the parties to which are unnamed, and the terms of which are unstated; and that whatever trust may attach to the stock alleged to be held by Coykendall, Soop and Greeley, the complaint does not allege facts sufficient to support any interest in the plaintiff under that trust. The trial court properly sustained the demurrers upon these grounds.

The gist of the case, as presented by the record and arguments of counsel, is simple and free from doubt. In argument and brief the plaintiff's counsel rest their claim on two propositions, each essential to the cause of action in question. First: The property of the West Hartford Company purchased on August 1st, 1899, constituted a trust fund equitably belonging to the then bondholders, and as such was transferred to the defendant corporation organized for the purpose of taking it over, and whose capital stock was issued against this property. Second: On August 1st, 1899, the plaintiff, by force of his option-contract with Coykendall, was equitable owner of three sevenths of the bonds, and so entitled to three sevenths of the property purchased, and therefore became entitled to three sevenths of the stock issued against it. This is the claim urged on behalf of the plaintiff, and no other claim finds reasonable suggestion in the complaint.

For the purpose of supporting the first proposition, the allegations of the complaint are defective. The second proposition rests upon inferences of law which are clearly unsound. The complaint, therefore, is bad in substance. The judgment on the demurrers is correct, and the judgment on the plea to the jurisdiction is harmless, and its liability to attack is immaterial.

After the demurrers had been sustained, the plaintiff filed an amendment to his complaint, containing an additional and more specific prayer for relief. The amendment did not avoid the substantial grounds on which the demurrer was sustained. It was filed without motion for leave, agree-

ment of parties, or offer to pay costs. The court committed no harmful error in disallowing the amendment so filed.

There is no error in the judgment of the Superior Court.

In this opinion TORRANCE, C. J., and PRENTICE, J., concurred.

BALDWIN, J. (dissenting). · As I read the complaint, it sets forth the option-contract with Coykendall, and its breach by him, only by way of inducement to show the foundation of the plaintiff's claim to an equitable interest in the bonds or stock in the hands of the defendants. The validity of that claim could not be determined in any suit not so brought as to put Coykendall in the position of a party. The majority of the court are of opinion that he retained that position after the action, as against him, had been abated by a formal judgment. It seems to me that this judgment put an end to his connection with the action. To abate an action is to end it. To abate an action as to one party, for want of jurisdiction, is to end it as to him. Coykendall could not be bound to attend further to proceedings which, as to him, the court had determined were no longer in existence. The abatement was total. It was not confined to so much of the action as might set up a right of action on the option-contract against Coykendall personally. *Powell* v. *Fullerton*, 2 B. & P. 420; 2 Williams' Saunders, 210, b.

If I am right in this view of the effect of the judgment, the plaintiff was necessarily injured by it, for he could obtain no relief against the other defendants in a proceeding which, as to Coykendall, was no longer in existence. Coykendall was an indispensable party to any inquiry into the plaintiff's equity to an interest in the bonds or in the stock of the new corporation. He had therefore been properly put in the position of a party; but he ceased to occupy it, when, as to him, the action was adjudged to be ended.

I cannot concur in the opinion of the majority of the court that in legal effect this judgment referred only to a personal action against Coykendall. The complaint was an entirety. The judgment was an entirety.

The demurrer to the complaint, subsequently filed by the other defendants, was properly sustained for the reason stated by the trial court, that the action could not be maintained against them after Coykendall had ceased to be a party. No other of the causes of demurrer assigned appear to me sufficient. I do not think that it was essential to the plaintiff's cause of action that he should state with greater particularity than he did how he became equitably entitled to share in the benefits of the purchase at the foreclosure sale. He was not seeking a specific performance of the contract. It had become impossible for Coykendall to perform it, for the bonds were no longer under his sole control. The plaintiff was pursuing an equity arising from acts and events subsequent to the breach of the contract. He did not sue as an equitable owner of bonds, but as one equitably entitled to follow the proceeds of bonds which ought to have been, but never were, his.

In this opinion HALL, J., concurred.