JOHN KAKALIK *v.* ALFREDO BERNARDO ET AL.

BOGDANSKI, C. J., PETERS, PARSKEY, AMENTANO and SHEA, Js.

Argued April 9—decision released June 9, 1981

*Stephen B. Alderman,* with whom, on the brief, was *Robert Ginsburg,* for the appellants (defendants).

*Charles L. Flynn,* for the appellee (plaintiff).

PETERS, J.   This is an appeal from a judgment ordering specific performance of a contract for the sale of real estate between the plaintiff buyer, John Kakalik, and the defendant sellers, Alfredo and Rose Bernardo.   The case was tried to the court when the defendants' claim for a jury trial was withdrawn in response to the plaintiff's withdrawal of his claim for monetary damages.[1]   The defend-

---

[1] A companion case tried together with this one resulted in a judgment awarding an amount representing the unpaid sales commission to the Beazley Company, the procuring real estate agent. The appeal from that judgment has not been perfected and is deemed to have been withdrawn.

ants have appealed from the judgment of specific performance in favor of the plaintiff Kakalik.

The relevant facts found by the trial court in its memorandum of decision establish the following: The defendants executed, on January 18, 1975, a multiple-listing contract for the sale of their home at 11 Tillert Court, North Haven. The plaintiff and the defendants agreed, in writing, upon the terms of a contract of sale for this property. The terms were negotiated over several days in early April, 1975. The contract contained a standard mortgage contingency clause that conditioned the plaintiff's obligation to purchase the property upon his ability to obtain a conventional mortgage for thirty years at 8.75 percent interest plus one point. In that connection, the contract further provided that the mortgage commitment "shall be obtained not later than April 23, 1975 or this agreement shall become null and void and deposit money returned to Buyer." The date of April 23, 1975, was not separately negotiated but represented a real estate broker's estimate of the average period of time normally required to obtain a mortgage commitment. The contract also specified that a closing for the passage of title take place "on or before June 16, 1975."

The plaintiff promptly pursued the procurement of mortgage financing with the New Haven Savings Bank. The bank's mortgage committee approved the mortgage loan on April 23, 1975, and a letter of commitment was mailed to the plaintiff, then residing in Maine, on April 24, 1975. The defendant Rose Bernardo was informed of the approval of the mortgage loan on April 23, 1975, but then indicated her unwillingness to consummate the sale.

The defendants took the position that the contract was not binding because they had received no written confirmation of the mortgage commitment from the plaintiff by April 23, 1975. The defendants had in fact changed their minds, for personal reasons, about the desirability of selling their home. The plaintiff, ready, willing and able to buy the home, repeatedly demanded, before the stipulated closing date, that the sale go forward, but the defendants refused.

The trial court concluded on these facts that the date stipulated for the procurement of the mortgage commitment was a date not intended by either party to the contract to be of the essence to performance. The court found that the defendants' insistence on strict compliance with this date resulted solely from the fact that they had changed their minds about selling their home and were seeking to avoid their contract obligation. Had the plaintiff been notified that strict compliance with this date was expected by the defendants, timely arrangements could have been made to deliver a written certification of commitment to the defendants on April 23, 1975. The court therefore concluded that the contract was fully binding and effective, that the plaintiff had met its preconditions, and that the sellers were in breach in failing to agree to a closing. The court determined that specific performance was an appropriate remedy for the plaintiff and not inequitable, despite the defendants' argument about the inflationary impact of the lapse of time between 1975, the date of the contract, and 1979, the date of the trial.

In their appeal from the judgment rendered against them, the defendants raise three issues.

Did the trial court erroneously limit its discretion concerning the propriety of specific performance? Did the court err in its interpretation of the mortgage commitment clause in the contract of sale? Did the court, in light of the factual circumstances, err in decreeing specific performance?

## I

The defendants' first claim of error arises out of a statement in the trial court's memorandum of decision. In discussing whether specific performance should be decreed, the court stated: "The defendants specifically and unequivocally insisted that the request for money damages be withdrawn if the case were to be tried to the Court, and this was done on the record and against the contrary suggestion on the part of the Court. They agreed that the remedy was to be specific performance or nothing." The defendants take two exceptions to this statement. In their brief, they argue that the trial court had inherent authority to award damages in lieu of specific performance under a general prayer for relief, and that the court therefore unduly restricted its own discretion when it limited its remedial options to "specific performance or nothing." At oral argument, the defendants' counsel[2] maintained that the court had misconstrued the record as to which party had insisted on the removal of damages from the case.

We consider these two arguments in reverse order. Although the record before us is incomplete, the transcript does reveal that it was the defendants who claimed the case for the jury docket when the plaintiff's prayer for relief included monetary dam-

---

[2] We note that the defendants' counsel on appeal did not himself try the case.

ages. Thereafter, evidently as a result of pretrial negotiations, the plaintiff withdrew the claim for money damages and the defendants withdrew their jury claim. Nothing in the record contradicts the trial court's assertion that the defendants were the moving party in narrowing the issues to exclude damages. We have no basis, therefore, to conclude that the trial court erred in its recollection of what had transpired.

The scope of the trial court's discretion to award specific performance was not erroneously limited by the withdrawal of the monetary claim. In the proper circumstances, a trial court has the authority to decree specific performance and to award monetary damages incidental thereto. *Heyman* v. *CBS, Inc.,* 178 Conn. 215, 229, 423 A.2d 887 (1979); *Schneidau* v. *Manley,* 131 Conn. 285, 289, 39 A.2d 885 (1944). The parties may, however, in their contract of sale, limit the right to specific performance or to damages in the event of breach. *Lanna* v. *Greene,* 175 Conn. 453, 458, 399 A.2d 837 (1978); *Ritucci* v. *Brandt,* 134 Conn. 364, 366, 57 A.2d 728 (1948). If the parties may validly negotiate a limitation of remedies clause at the time that they enter into a contract, we can perceive no reason why they may not, with equal validity, enter into such an agreement to narrow the issues at the time of the trial. Such an agreement has potential risks and benefits for each: the party seeking specific performance can foreclose evidence of damages as a distracting alternative, while the party defending against specific performance may emerge, despite its breach, owing nothing.

## II

The defendants' second claim of error challenges the interpretation that the trial court placed upon the mortgage commitment clause in the contract of sale. The contract contained a typewritten provision describing the terms of the mortgage commitment upon which the plaintiff's obligation was conditioned. It also contained a printed provision, in which only the date had been completed by typewriter, that "[m]ortgage commitment stated above shall be obtained not later than April 23, 1975 or this agreement shall become null and void and deposit money returned to Buyer." The defendants rely on the language of "null and void" as releasing them from their contractual obligation to the plaintiff in the absence of completion of mortgage arrangements by the appointed date. The trial court held that full satisfaction of the mortgage commitment on the designated date was not a material term of the contract, that the date of the mortgage commitment was not "of the essence" and that the defendants were therefore not excused from performance. We agree.

In real estate contracts, "the fact that a specific time is fixed for payment or for conveyance does not make 'time of the essence' — at least, it does not make performance at the *specified* time of the essence. Failure to pay at that time is not per se sufficient to terminate the seller's duty to convey; and failure to convey on the exact date does not per se discharge the buyer." 3A Corbin, Contracts § 716, p. 365 (1960). See *Ravitch* v. *Stollman Poultry Farms, Inc.,* 165 Conn. 135, 148, 328 A.2d 711 (1973); *Kasten Construction Co.* v. *Maple Ridge*

*Construction Co.,* 245 Md. 373, 377, 226 A.2d 341 (1967); *Carsek Corporation* v. *Stephen Schifter, Inc.,* 431 Pa. 550, 554–55, 246 A.2d 365 (1968); *Safeway System, Inc.* v. *Manuel Bros., Inc.,* 102 R.I. 136, 145, 228 A.2d 851 (1967); 6 Williston, Contracts (3d Ed. 1963) § 852. The rule that time is ordinarily not of the essence in transactions involving real property applies to the occurrence of a contractual condition as well as to the performance of a contractual duty. Restatement (Second), Contracts (Tent. Ed. 1973) § 255.

The meaning properly to be ascribed to the mortgage commitment clause was therefore a question of the intent of the parties, to be determined, as a matter of fact, from the language of the contract, the circumstances attending its negotiation, and the conduct of the parties in relation thereto. *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981); *Hughes* v. *Contemporary Mission, Inc.,* 180 Conn. 150, 152, 429 A.2d 827 (1980); *Otto Contracting Co.* v. *S. Schinella & Son, Inc.,* 179 Conn. 704, 709, 427 A.2d 856 (1980); *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645 (1970). As a finding of fact, the trial court's determination of what the parties intended by the mortgage commitment clause is a determination that we must sustain unless it was clearly erroneous in light of the evidence and the record as a whole. Practice Book § 3060D; *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Mach., Inc.,* 184 Conn. 10, 17, 441 A.2d 43 (1981); *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 564, 438 A.2d 759 (1980); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

There was ample evidence to support the trial court's finding that time was not of the essence in the procurement of the mortgage commitment under this contract. The contract contains no clause expressly making time of the essence or expressly requiring notification of the defendants on or before the designated date. The date selected for the mortgage commitment clause was chosen by a real estate agent solely on the basis of her experienced estimate of the time normally required to process mortgage applications. At no time until the designated date had arrived did the defendants indicate their interest in having the mortgage arrangements then finally settled; by the designated date, as the trial court found and the defendants do not dispute, the defendants were eager to avoid their contract to sell. Like the trial court, we deem it unnecessary to decide whether the mortgage commitment clause would have been satisfied by the mortgagee's oral notification of the parties on April 23, 1975, or its written notification to the plaintiff on April 24, 1975. By the 24th, it was clear that the defendants were refusing to proceed with the contract, and the plaintiff was thereafter excused from completing mortgage arrangements with respect to this property. *Gilman* v. *Pederson,* 182 Conn. 582, 583, 438 A.2d 780 (1981). In these circumstances, notification to the parties of the bank's favorable action on the mortgage application on either April 23 or April 24 was not a material condition of their obligations under the contract of sale. The trial court therefore did not err in its interpretation of the contract or in its conclusion that the plaintiff had established his right, under the contract, to enforce performance by the defendants.

## III

The defendants' third claim of error addresses the trial court's determination that the remedy of specific performance was warranted in the circumstances of this case. The defendants argue that the court's order was unduly harsh and inequitable. We find no error.

Two undisputed principles govern the disposition of this claim of error. The availability of specific performance is not a matter of right, but depends rather upon an evaluation of equitable considerations. *Morris* v. *Costa,* 174 Conn. 592, 599, 392 A.2d 468 (1978); *Parkway Trailer Sales, Inc.* v. *Wooldridge Bros., Inc.,* 148 Conn. 21, 166 A.2d 710 (1960). The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. *Robert Lawrence Associates, Inc.* v. *Del Vecchio,* 178 Conn. 1, 18–19, 420 A.2d 1142 (1979); *Sidor* v. *Kravec,* 135 Conn. 571, 573–74, 66 A.2d 812 (1949).

In their argument that specific performance is inappropriate in this case the defendants claim that enforcement would constitute a windfall to the plaintiff and a hardship to the defendants. They point to two factors: (1) the disproportion between the contract price and the present market value of the property due to inflation and the diminished purchasing power of the dollar and (2) the absence of substantial injury to the plaintiff, who purchased a comparable home for only $1000 more than the contract price shortly after the defendants' refusal to sell. It is noteworthy that these claims of hardship arise out of events that postdate the time for performance under the contract. The defendants

make no claim that the agreement was not totally reasonable and equitable either at the time of its execution or at the time when performance thereunder was contemplated. The trial court, in balancing the equities, could rationally have concluded that any hardship on the defendants was attributable primarily to their own refusal to honor their contractual commitments, to their own unexcused breach of contract. The damages suffered by a party injured by breach are generally measured at the time of breach and not at the time when that party succeeds in having his case come to judgment. *Vines* v. *Orchard Hills, Inc.,* 181 Conn. 501, 513, 435 A.2d 1022 (1980); *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 274, 320 A.2d 811 (1973). This court has held, in enforcing a liquidated damages clause, that benefits attributable to a rising market subsequent to breach rightfully accrue to the party injured by breach rather than to the party in breach. *Vines* v. *Orchard Hills, Inc.,* supra, 513. A trial court, in the exercise of its judicial discretion, may similarly conclude that specific performance is appropriate despite a significant rise in the value of the real property at issue. A trial court may conclude, furthermore, that the plaintiff's equities, when balanced against those of the defaulting defendants, are not diminished by the plaintiff's reentry into the housing market subsequent to the defendants' breach. Having accepted employment in the area, the plaintiff had no choice but to find alternative acceptable housing when the defendants refused to sell. Good faith mitigation of damages is not inequitable. Under these circumstances, we find no abuse of discretion in the trial court's award of specific performance.

There is no error.

In this opinion BOGDANSKI, C. J., PARSKEY and ARMENTANO, Js., concurred.

SHEA, J. (concurring). I take issue with the portion of the opinion stating that the "contract contains no clause expressly making time of the essence . . . ." The agreement provided that unless the mortgage loan commitment was obtained "not later than April 23, 1975" the agreement for the sale of the property "shall become null and void and deposit money returned to Buyer." Although time of performance is generally deemed not to be of the essence in real estate sale contracts, it is unquestionable that the parties may so stipulate and that a clear expression of such an intention must be given effect. 6 Williston, Contracts (3d Ed.) § 846; 3A Corbin, Contracts § 715; *Camp* v. *Cohn,* 151 Conn. 623, 625, 201 A.2d 187 (1964). It is not essential to phrase the provision in haec verba. "Any words which show that the intention of the parties is that time shall be of the essence of the contract or any clause which provides in unequivocal terms that if the fulfillment is not within a specified time the contract is to be void will have that effect." 17 Am. Jur. 2d, Contracts § 333.

The clause before us would certainly qualify under this rule. In the context of the very same kind of transaction a similar mortgage contingency clause has been construed to make time of the essence. *Grade* v. *Loafman,* 314 Mich. 364, 22 N.W.2d 746 (1946). Contract provisions which not only set the time of performance but also spell out the consequences of nonperformance usually have been construed to make time of the essence. *Butler* v. *Cortner,* 42 Idaho 302, 246 P. 314 (1926); *Wimer* v. *Wagner,* 323 Mo. 1156, 20 S.W.2d 650 (1929);

*Doctorman* v. *Schroeder,* 92 N.J. Eq. 676, 114 A. 810 (1921); cf. *Walker* v. *Weaver,* 23 N.C. App. 654, 209 S.E.2d 537 (1974); *Hoffman* v. *Employer's Liability Assurance Corporation,* 146 Or. 66, 29 P.2d 557 (1934).

Although contract language must be construed in the light of the particular transaction involved and the relationship of the parties, none of the circumstances here points to any intention other than that clearly expressed. In fact, the nature of this kind of mortgage contingency clause, which depends for fulfillment upon conditions often within the control of the buyer, raises as a practical matter many of the considerations which have led to the settled view that time is of the essence in an option contract. 6 Williston, Contracts (3d Ed.) § 853; *Patterson* v. *Farmington Street Ry. Co.,* 76 Conn. 628, 645, 57 A. 853 (1904). We are not dealing here with a situation where the buyer would suffer some extreme forfeiture which would justify excusing the nonperformance of a condition. Restatement (Second), Contracts (Tent. Ed. 1973) § 255. The parties agreed upon a rescission if the contemplated commitment was not obtained by the date specified and there is nothing in the evidence to justify disregarding their well-expressed intention to that effect.

I concur in the result reached by the majority, however, because I agree with the conclusion[1] of the trial court that the mortgage commitment condition, in the sense contemplated by the parties, was met once the loan committee of the lending institu-

[1] The majority opinion implies that the trial court failed to decide whether the mortgage commitment clause had been satisfied by approval of the loan on April 23, 1975. The pertinent portion of the memorandum of decision is as follows: "It can also be argued as to what was the precise meaning of the mortgage commitment

tion approved the mortgage loan application of the plaintiff on April 23, 1975, the date specified. It is a reasonable inference from the undisputed facts that this event, approval by the authorized agency of the bank, was precisely what the parties had in mind by using the term "mortgage commitment." As the trial court observed, the primary purpose of the clause had been served, and the delivery of a formal letter to the plaintiff, his acceptance of the terms of the loan, and his payment of various fees were never considered in fixing the particular date. They had in mind only the main event, loan approval by that date. The fact that the bank might not have been legally "committed" to making the loan until the various additional conditions set forth in its letter had been accepted or fulfilled would not indicate that performance of all these details by the time specified was ever intended.

For the reasons given I concur in the result reached by the majority.

---

clause. The mortgage financing was approved by the mortgage committee of the bank on April 23, 1975. Had not the primary purpose of the clause been met? Was it necessary to deliver a written letter of commitment to the defendants? Was it necessary to have the plaintiff actually pay the finder's fee as required by the letter from the bank, on or before April 23, 1975, for the formal commitment to be in effect? It is obvious from these questions that none of these considerations were even contemplated in fixing the date of April 23, 1975." This passage indicates in rhetorical fashion that the trial court did conclude that approval of the application was what the parties meant by a "mortgage commitment."