[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION
The plaintiff is seeking a temporary mandatory injunction which would put her in possession of office premises presently under lease from the defendant DelMonico to the defendants John Williams and Sue Wise. The plaintiff's claim is based on a prior lease she entered into with the defendant DelMonico.
FACTS
The events leading to this controversy may be summarized as follows:
The plaintiff is a practicing attorney with offices or Orange Street in New Haven. In October 1991, she and the defendant DelMonico talked about her possibly purchasing and then leasing office space in the defendant's office building at 51 Elm Street, New Haven. After considerable discussion over several weeks, these two parties entered into a lease on February 20, 1992. The defendant landlord agreed to pay for certain renovations with the occupancy date of April 15, 1992 agreed upon. A contingency clause was included which addressed the month-to-month tenancy of the then tenant, Berlitz International, Inc. (hereinafter "Berlitz").
Relying on assurances from DelMonico (hereinafter CT Page 7259 "landlord") that Berlitz would not present any problems, the plaintiff made final plans to move. She purchased furniture, historical artwork portraying the premises at 51 Elm Street as it appeared in old New Haven, and planned the layout for the use of the space in question.
On March 18, 1992, having learned of the Torre-DelMonico lease, the defendant Wise made several attempts to speak to the landlord. Mr. DelMonico was driving back to New Haven from Boston when he received Ms. Wise's message, and made at least two calls to her. Ms. Wise then expressed her "concerns" over the Torre lease and stated this would cause "problems" if the plaintiff became a tenant. Wise also told DelMonico that he would be responsible for any problems in the building which resulted from the lease. By the end of the day, Wise and DelMonico agreed that the firm of Williams and Wise would lease the unit previously leased to Torre and that they would indemnify Mr. DelMonico from any and all damages and expenses, he suffered as a result of his terminating the lease with Torre.
These agreements were formally executed on March 20, 1992. On March 21, 1992, DelMonico wrote to the plaintiff advising he that he was exercising his right to terminate the lease by virtue of the contingency clause, claiming that he could not effect the Berlitz removal by April 1. (Actually, Berlitz substantially removed on April 2.)
The defendants Williams and Wise do not dispute the fact that they entered into the lease and indemnity agreement knowing of the prior Torre lease. They and the landlord maintain that Torre had no legal right in the lease in that it was terminated by the landlord pursuant to the contingency clause. The Williams and Wise alternative position is that if the landlord did not legally terminate the lease, their actions in persuading the landlord to breach the Torre lease were justified by the in will and bad blood which existed between the plaintiff and the defendants Williams and Wise. For about five years prior to March 1991, the plaintiff had been an associate in the Williams and Wise law firm. Their relationship since March had been acrimonious and litigation had resulted.
 I.
The plaintiff has to satisfy five basic requirements to obtain injunctive relief:
1) that she has a legal right upon which to premise her claim; 2) a likelihood of success on the merits at trial; 3) that there is no adequate remedy at law; 4) that she will suffer irreparable harm; and 5) that a balancing of the hardships favors CT Page 7260 granting the injunctive relief. Connecticut Association of Clinical Laboratories v. Connecticut Blue Cross, Inc.,31 Conn. Sup. 110, 113 (1973).
All three defendants have argued that by virtue of the operation of the contingency clause, the landlord properly terminated the lease and thus the plaintiff has no legal right upon which to base her suit. The clause in question reads as follows:
 I.4 CONTINGENCY. The parties recognize that the Demised Premises are currently occupied by a tenant, Berlitz International, Inc., and each party's obligation to proceed under this lease is conditioned upon the Landlord causing the Demised Premises to be vacant no later than April 1, 1992, and to be available for occupancy by the Tenant no later than April 15, 1992. If the Demised Premises are not available for occupancy by the Tenant as of April 15, 1992, then this agreement shall be terminated and neither party shall have any claim against the other with respect to this lease. Landlord further agrees to make all reasonable efforts to resolve this contingency prior to April 1, 1992, and to notify Tenant promptly upon such contingency being resolved.
The lease between the landlord and the plaintiff was executed on February 20, 1992. At that time, Berlitz was a month-to-month tenant which had indicated it would be vacating the premises it occupied. On February 25th, the landlord wrote to Berlitz saying the premises in question must be vacated. He had spoken to the Berlitz real estate director on the phone prior to writing.
This appears to represent the sum total of the landlord's efforts to have Berlitz vacate the premises. Conversations subsequent to February 25th had to do with Berlitz's desire to have the use of two or three classrooms on an intermittent basis subsequent to the removal of the bulk of the Berlitz property or April 2d. Contrasted with this modest activity is that of the plaintiff who was buying furniture and artworks for the premises she planned to occupy, meeting with the contractor who was to renovate the area, and studying diagrams of the floor layout to plan the installation of utilities, etc. CT Page 7261
The court notes that the attorney for the landlord during the lease negotiations testified that the landlord never discussed a summary process action with him after the February 20th lease execution. Further, while the plaintiff testified that she had contacted the Berlitz manager and was prepared to work out an arrangement with him that accommodated himself and Berlitz, the landlord produced no evidence to suggest that Berlitz was insisting on staying on. In fact, the unrebutted testimony of the plaintiff was that Berlitz substantially removed from the premises on April 2nd. Although some Berlitz property remained and they were permitted to use the premises into June, the defendants offered no explanation of that arrangement. The landlord never explained why Berlitz, lacking a lease and having indicated it was moving out, was apparently being permitted to trigger the contingency clause which would terminate a four year lease with the plaintiff.
An explanation of the landlord's actions may be found in early testimony in these proceedings. On April 9th, the landlord was examined by the plaintiff's counsel and he told of receiving phone calls on March 18th from Ms. Wise. Up to this point, he had not advised the plaintiff that Berlitz presented a problem nor had he told the plaintiff he was even contemplating resorting to the contingency clause. But, he said, Ms. Wise stated she had a problem with this plaintiff having an office in the same building as Williams and Wise and other occupants would also be concerned. Mr. DelMonico then said:
 "She was very upset that there was a problem, and that's what started me on doing something other than that.'
This admission was repeated at a later point in his testimony. From this testimony, the court concludes that, until hearing from Ms. Wise, the landlord was planning to honor this least agreement with the plaintiff and there was no real problem involving Berlitz.
At the same time the leases between the landlord and Williams and Wise was executed on March 20, 1992, the landlord and Ms. Wise signed the indemnity agreement in which Williams and Wise agree to hold the landlord harmless from any liability resulting from his leasing Unit 7 to them. (Mr. Williams signed it later in the day). This agreement had been decided upon between the landlord and Ms. Wise before they met with the landlord's attorney. While the landlord is positive that the document was executed on March 20, because he had both it and the lease in his possession that evening, the indemnity agreement is dated April 1, 1992. The acknowledgment clauses bear no date, but the witness clause refers to the April 1st date. CT Page 7262
From the way these parties had proceeded up to March 20, the court concludes that this post-dating was intentional and that it was calculated to suggest, when and if this transaction was under scrutiny, that the hold harmless agreement was executed after Ms. Torre was notified. It was calculated to paint this transaction as an ordinary commercial matter. It obviously was not.
Examining the events leading up to March 18th, the court concludes that the landlord failed "to make all reasonable efforts to resolve this contingency prior to April 1, 1992 . . . ." Consequently, his subsequent notice of termination was ineffective. It necessarily follows that the plaintiff has a likelihood of success on the merits.
There is further support for the plaintiff's legal right to occupy the premises and for her ultimate success. This is found in the failure of the landlord to exercise the contingency clause in timely fashion, i.e., when he claims to have learned he could not remove Berlitz, as he alleges. This would have prevented the plaintiff from investing time, money, and effort in planning for something that could not come to pass. His silence in the face of the plaintiff's actions warrants his being estopped to exercise the contingency clause. Winestine, et al. v. The Rose Cloak And Suit Company, et als, 93 Conn. 633, 637 (1919).
 II.
When an equitable injunction is claimed, the party seeking that relief must show lack of an adequate remedy at law and irreparable damage. Stocker v. Waterbury, 154 Conn. 446, 449
(1967); and Coyle v. Housing Authority, 151 Conn. 421, 42
(1964).
The plaintiff has testified as to the properties she examined before deciding to enter into the lease in question. She indicted what her reasons were for making that decision and then proceeding to adopt a motif for its renovation and decoration. Reference has already been made to the items purchased with the premises in mind. This was to be her "legal home" for four years with the option to renew for an additional three years. Her planned move had been announced to various persons, including, significantly, most of her clients and other members of the bar.
The defendants have repeatedly argued that this preference of the plaintiff for that particular location could easily be altered. They point to the general glut of office space in the downtown area of New Haven and presented a real estate expert who offered photographs depicting a variety of desirable office CT Page 7263 locations. It should go without saying that one's idiosyncratic preferences for one place or another are preferences which should be respected.
The plaintiff asks this court to restore to her the fruits of her bargain, the particular office location she started to create and which she wants to finish. She claims no dollar figure will stand as a pure substitute for the unit in question.
Connecticut courts have long recognized the fact that in disputes over interests in real estate, money damages may not replace a loss of that interest. The plaintiff cites a 1893 Connecticut case, Andrews v. Babcock, 63 Conn. 109, where the court stated at page 111:
 "It is an elementary principle that a party, in order to avail himself of the liberal relief given by a court of equity, must show that he has no adequate remedy at law. That a vendee may come into a court of equity and enforce a contract of this nature has been settled by a long line of decisions, too numerous to mention here. The reason of these decisions is perfectly apparent. It is because mere damages cannot take the place of the land which the vendee desires, and which because of its location, or for other reasons, is peculiarly desirable to him.
Specific performance is a frequent remedy in matters involving interests in real estate. More recent statements enunciating this principle include: Ecos Corporation v. Conlon,4 Conn. App. 572, 574 (1985); Kakalik v. Bernardo, 184 Conn. 386,395 (1981).
The combined actions of these defendants have also caused the plaintiff to suffer irreparable harm. The landlord's inaction as to Berlitz, if action to remove them was really necessary, and his encouragement of the plaintiff in her moving and relocation efforts, were callous and indifferent acts which caused the plaintiff severe stress and anxiety and held her up to embarrassment in the community. These actions, coupled with the tortious interference with her contractual rights by the defendants Williams and Wise, caused the plaintiff a loss of her right to free association, the right to go about her business with others unimpeded, and in effect imposed upon her a form of discrimination. CT Page 7264
Irreparable injury has been described as follows;
 "An injury is irreparable when there is no legal remedy furnishing full compensation or adequate redress because of the ineffectiveness of such legal remedy, or when, owing to the delay incident to the prosecution of an action at law to final judgment and obtaining execution thereon, such judgment and process would be fruitless of beneficial results." Gorham v. New Haven, 82 Conn. 153, 157 (1909).
It is the assessment of this court that this plaintiff has suffered irreparable injury at the hands of these defendants.
 IV.
Finally, before granting injunctive relief, the court must balance the hardships involved as to all parties. Mr. DelMonico will not be prejudiced in any way as he will continue to receive monthly rent checks. The financial terms of his lease with the plaintiff and with Williams and Wise are virtually identical.
As for Williams and Wise, they have argued no hardship (except for the presence of Ms. Torre of which the court will treat below).
Contrasted with the defendants, the plight of the plaintiff is serious. She is presently occupying quarters she has found wanting on several counts. She has purchased furniture and furnishings for use in Unit 7 in the DelMonico building. Some of the furniture is stored there. She has announced that she is moving but has been in limbo for four months while, this matter has proceeded. Considerable delay has been occasioned by the defendants' appeals of the court's interlocutory decisions. All of this, coupled with the expense incurred, dictates the conclusion that the plaintiff is the only party suffering any hardship and that hardship is substantial.
 V.
The defendants Williams and Wise have consistently argued that even if the landlord's act of terminating the lease were to be found invalid, the plaintiff cannot prevail. They have supplied no case law to support this argument, but they claim that the equities are in their favor because their actions were justified and that their concerns were genuine and serious. CT Page 7265
Ms. Wise, who made the first contact with the landlord on March 18th upon hearing of the Torre lease, never testified in this proceeding. Thus, the Williams and Wise concerns and fears were introduced through Attorney Williams.
Mr. Williams related the stormy history of the relationship between the plaintiff and Williams and Wise between March 1991 and March 18, 1992. During this period the parties had disagreements, hired counsel, were in litigation, and exchanged communications, both pleasant and unpleasant. They remain estranged.
Mr. Williams also stated his concerns to be that Ms. Torre would "assault people in and associated with" his office, "rendering it uninhabitable". He went on to state his "belief and feeling that the office and he were under a no holds barred assault." He was worried about the safety of the other women in the office, including Attorney Wise. He therefore felt it necessary to make sure the plaintiff "did not get into the building."
There were four episodes related by Mr. Williams as the partial basis for his concerns as enunciated above. He was not an eyewitness to any of these occurrences. In addition, a sheaf of correspondence from the plaintiff to these defendants was offered by Mr. Williams and duly read by the court.
The plaintiff Torre is a lawyer who was an associate of these defendants for about five years. She offered several letters from both defendants to her, received during her association with them. They extolled her abilities and expressed their high regard for her. While Mr. Williams depicted Ms. Torre as the scourge of his office staff, one of his staff left him and applied for and received employment in the Torre office.
In brief, the court concludes that the extreme measures taken by these two defendants were totally uncalled for. The court finds no justification for their behavior and rejects as absurd the suggestion that there was a logical basis for the fears and concerns expressed by Mr. Williams.
CONCLUSION
It is the decision of the court that a temporary injunction should issue and it is therefore ordered that:
1. The defendant Ernest DelMonico shall proceed forthwith to implement the terms of the lease of February 20, 1992 as to such parts as he is to perform, and he is ordered to put the plaintiff Karen Torre in possession of Unit 7 at 51 Elm Street, New Haven.
2. The defendants John Williams and Sue Wise are ordered to surrender possession of the premises known as Unit 7, 51 Elm Street, New. Haven. The lease dated March 20, 1992 between these defendants and the landlord Ernest DelMonico is declared null and void.
3. All three defendants are hereby enjoined directly or indirectly, by themselves or their agents or employees, from interfering with the plaintiff's peaceful use and enjoyment of the premises known as Unit 7 and the common areas comprising 51 Elm Street, New Haven.
Anthony V. DeMayo, Judge