(March 9, 1926.)

## ERNEST L. BUTLER, Respondent, v. H. J. CORTNER and ALICE J. CORTNER, Appellants.

[246 Pac. 314.]

VENDOR AND PURCHASER—CONTRACT OF PURCHASE—TIME OF THE ESSENCE — DEFAULT OF PURCHASER — TENDER BY PURCHASER AFTER DEFAULT.

1. Provision in contract, that if purchaser failed to make stipulated payments at time and in manner provided deed should be returned to vendor and contract of sale held for naught and void in all its terms, makes time of the essence of the contract.

2. Under contract for sale of real estate, providing that on default in payments for more than thirty days deed should be returned by escrow-holder and contract held for naught, tender of payments by purchaser's agent after default and after notice to escrow-holder of vendor's intention to stand on terms of contract would not authorize action for return of instalments theretofore paid, relief if any being in equity for specific performance or other appropriate remedy.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Action at law for return of instalments of the purchase price on contract for sale of real estate and to subject the property to a lien therefor. Judgment for plaintiff. *Reversed.*

Elliott & Healy, J. B. Eldridge and Morgan & Smith, for Appellants.

A purchaser of real property who, having paid a part of the purchase price, breaches the contract by his failure to make payment of a subsequent instalment when due may not

Publisher's Note.

1. See 27 R. C. L. 448.
2. See 27 R. C. L. 628.

See Vendor and Purchaser, 39 Cyc., p. 1369, n. 48; p. 2025, n. 58.

recover back the money paid. The payment made is forfeited, regardless of the presence in or absence from the contract of a stipulation for forfeiture. (*Hall v. Yaryan,* 25 Ida. 470, 138 Pac. 339; *Hansbrough v. Peck,* 72 U. S. 497, 18 L. ed. 520; *Hurley v. Anicker,* 51 Okl. 97, 151 Pac. 593, L. R. A. 1918B, 538; *Helm v. Rone,* 43 Okl. 137, 141 Pac. 678; *Bank of Columbia v. Hagner,* 1 Pet. (U. S.), 455, 7 L. ed. 219; *Reddish v. Smith,* 10 Wash. 178, 38 Pac. 1003; *Downey v. Riggs,* 102 Iowa, 88, 70 N. W. 1091; *Battle v. Rochester City Bank,* 5 Barb. (N. Y.) 414; *Hawkins v. Robertson* (Ind. App.), 136 N. E. 576, and cases cited; *Leonard v. Morgan,* 6 Gray (Mass.), 412; *Haynes v. Hart,* 42 Barb. (N. Y.) 58; *Hillyard v. Banchor,* 85 Kan. 516, 118 Pac. 67; *Grimes v. Goud* (Me.), 10 Atl. 116; *Scott v. Lewis,* 177 Mo. App. 8, 163 S. W. 265; *Peterson v. Bunting,* 43 Cal. App. 707, 185 Pac. 508; *Fresno Irr. Farms Co. v. Canupis,* 39 Cal. App. 184, 178 Pac. 300; *Garvey v. Barkley,* 56 Wash. 24, 104 Pac. 1108; *Kershaw v. Hurtt,* 66 Okl. 117, 168 Pac. 202; *McManus v. Blackmarr,* 47 Minn. 331, 50 N. W. 230.)

"Time is made the essence of the contract by a clause in the contract providing that if payment is not made in accordance with its terms, it shall be null and void." (36 Cyc. 713, 39 Cyc. 1369; *Grey v. Tubbs,* 43 Cal. 359; *Kimball v. Tooke,* 70 Ill. 553; *Martin v. Morgan,* 87 Cal. 203, 22 Am. St. 240, 25 Pac. 350; *Wilcoxson v. Stitt,* 65 Cal. 596, 52 Am. Rep. 310, 4 Pac. 629; *Milnor v. Willard,* 34 Ill. 38; *Kemp v. Humphreys,* 13 Ill. 573; *Smith v. Brown,* 10 Ill. 309; *Schumann v. Mark,* 35 Minn. 379, 28 N. W. 927; *Lipscomb v. Faqua,* 103 Tex. 585, 131 S. W. 1061; *Coughran v. Bigelow,* 9 Utah, 260, 34 Pac. 51; affirmed, 164 U. S. 301, 17 Sup. Ct. 117, 41 L. ed. 442; *Quinlan v. St. John,* 28 Wyo. 91, 201 Pac. 149, 203 Pac. 1088; *Pickens v. Campbell,* 104 Kan. 425, 179 Pac. 343.)

The rule is well established in Idaho that where time of payment is made the essence of the contract by the use of appropriate language showing that it was the intention of the parties it should be so, the failure of the vendee to make, or to tender, payment when due, terminates his rights under the contract and he cannot recover payments there-

tofore made in an action at law, nor exact specific perform-
ance of the contract unless his default be excused from some
cause cognizable in equity. (*Machold v. Farnan,* 14 Ida.
258, 94 Pac. 170; *Hall v. Yaryan,* 25 Ida. 470, 138 Pac. 339;
*Papesh v. Wagnon,* 29 Ida. 93, 157 Pac. 775; *Rischar v.
Shields,* 26 Ida. 616, 145 Pac. 294; *Prairie Dev. Co., Ltd., v.
Leiberg,* 15 Ida. 379, 98 Pac. 616; *Bell v. Stadler,* 31 Ida.
568, 174 Pac. 129.)

The rescission of a contract of purchase of real estate is
a new contract, and whether or not a rescission has occurred
in the case is a question of fact to be determined from the
conduct and conversations of the parties showing their in-
tention and the meeting and agreement of their minds with
respect to the repayment by appellants to respondent of
the instalment of the purchase price paid prior to his de-
fault. (*Holverson v. Evans,* 38 Ida. 428, 224 Pac. 1067;
*Tusco v. Green,* 194 Cal. 574, 229 Pac. 327; *Aderholt v.
Wood,* 66 Cal. App. 666, 226 Pac. 950; *Quinlan v. St. John,*
28 Wyo. 91, 201 Pac. 149; *Glock v. Howard & Wilson Col-
ony Co.,* 123 Cal. 1, 69 Am. St. 17, 55 Pac. 713, 43 L. R. A.
17.)

The two writings, the contract itself and the escrow agree-
ment, being contemporaneous instruments, relating to the
same subject and one expressly referring to the other, must
be construed together as stating the agreement of the par-
ties. (39 Cyc. 1296.)

Reddoch & Hunter and Martin & Martin, for Respondent.

The acts of defendant Cortner in refusing to accept the
offer of payment of the principal and interest then due to
him under the contract of purchase made on January 5,
1922, by plaintiff, coupled with an offer on the part of the
plaintiff to pay all taxes and water bills then due, and his
refusal again on January 6, 1922, to accept such payment,
coupled with an offer to pay said taxes and water bills, and
his instructions to the bank to refuse said offer of payment
and the tender of the money, together with his statements
on each of said occasions that he rescinded the contract of
purchase, and that the transaction was ended, his withdrawal

of the escrow papers thereafter from the custody of the bank, coupled with his acts on January 15, 1922, in going to the farm in the night-time and in the absence of plaintiff removing the furniture and belongings of plaintiff therefrom, and his refusal to restore possession when demanded, amounted to a rescission of the contract, which the plaintiff had a right to accept, and thereupon recover from the defendant the payments which he had made. (*Maffet v. Oregon & C. R. Co.,* 46 Or. 443, 80 Pac. 489; 36 Cyc. 713; 39 Cyc. 1388, 2002, 2004; 27 R. C. L. 641; *Perrin v. Chidester,* 159 Iowa, 31, 139 N. W. 930; *Murphy v. Dalton,* 139 Mich. 79, 102 N. W. 277; *Jones v. Grove,* 76 Wash. 19, 135 Pac. 488; *Hurley v. Anicker,* 51 Okl. 97, 151 Pac. 593, L. R. A. 1918B, 538; *Castelberry v. Pierce's Admr.,* 5 Stew. & P. (Ala.) 150, 24 Am. Dec. 774; *Remington Arms Union etc. Co. v. Gaynor Mfg. Co.,* 98 Conn. 721, 120 Atl. 572; *Pierce v. Staub,* 78 Conn. 459, 112 Am. St. 163, 62 Pac. 760, 3 L. R. A., N. S., 785; *Munson v. Apartment & Hotel Inv. Co.,* 62 Utah, 13, 218 Pac. 109; 6 R. C. L., sec. 323, p. 943; *In re Morgantown Tin Plate Co.,* 184 Fed. 109; *Armsby Co. v. Grays Harbor Commercial Co.,* 62 Or. 173, 123 Pac. 32; *McDaniel v. Gray & Co.,* 69 Ga. 433.)

Forfeitures are not favored either in law or in equity. Courts are reluctant to declare and enforce a forfeiture if by reasonable interpretation it can be avoided. (5 Pomeroy's Eq. Jur., 4th ed., secs. 2238, 4997; *Castleberry v. Hay,* 8 Ida. 670, 70 Pac. 1035; 6 R. C. L. 943; *Hansbrough v. Peck,* 72 U. S. 497, 18 L. ed. 520; *LaShonse v. Herrick,* 39 Ida. 67, 225 Pac. 1019; *Abercrombie v. Stoddard,* 39 Ida. 146, 228 Pac. 232.)

Even where a contract provides for a forfeiture a party thereto will not be permitted to declare such forfeiture after the party in default has tendered performance. (*Wiseman v. Cottingham* (Tex. Civ. App.), 141 S. W. 817; *Miller v. Cox,* 96 Cal. 339, 31 Pac. 161.)

Upon failure of consideration or the vendee placing himself in such a position that he cannot fulfill his contract, in a contract for the sale of real property the vendee is entitled to a lien for the amounts paid by him under the terms of

the contract. (*Wilson v. Sunnyside Orchard Co.*, 33 Ida. 501, 196 Pac. 301; *Johnson v. Berns*, 111 Or. 165, 209 Pac. 94, 224 Pac. 624, 225 Pac. 727; *Meacham v. Burgiss*, 1 Fed. (2d) 47; *Montgomery v. Meyerstein*, 186 Cal. 459, 199 Pac. 800; *Wilson v. Smith*, 69 Cal. App. 211, 230 Pac. 963; *Tudor v. Raudabaugh*, 278 Fed. 254; *Goodrich-Lockhart Co. v. Sears*, 270 Fed. 971; *Stewart v. Mann*, 85 Or. 68, 165 Pac. 590, 1169; *Groves v. Stouder*, 58 Okl. 744, 161 Pac. 239; *Elterman v. Hyman*, 192 N. Y. 113, 127 Am. St. 862, 84 N. E. 937; *Davis v. William Rosenzweig Realty Operating Co.*, 192 N. Y. 128, 127 Am. St. 890, 84 N. E. 943, 20 L. R. A., N. S., 175.)

The mere failure to make a payment of purchase money according to the terms of an agreement will not be held a repudiation of the contract so as to authorize the other party to refuse performance or to rescind. (*Abercrombie v. Stoddard*, 39 Ida. 146, 228 Pac. 232; 13 C. J. 613.)

VARIAN, District Judge.—This is an action at law for money had and received. It grows out of an agreement by respondent Butler to purchase a farm from appellant Cortner. The agreed purchase price of the farm was $27,000. Nine thousand dollars was paid at the time of the execution of the agreement, and the payment of a debt, secured by a mortgage on the premises, was assumed. The remaining instalments were further evidenced by promissory notes deposited in escrow, one of which, in the sum of $1,500 and interest, was due on or before December 1, 1921. In addition, respondent agreed to pay annually the taxes and certain irrigation charges. The agreement was in writing, and contained the following provision:

"It is hereby mutually agreed that first parties shall execute to second party a deed conveying the title of said premises to second party, said deed to contain the usual covenants of warranty and said deed is to be placed in escrow in the First National Bank of Boise City, Idaho, together with a copy of this contract and the notes hereinbefore referred to, and an escrow contract shall be executed upon the back of the envelope containing the same providing

that when the second party has made all the payments as herein provided to said escrow for the use and benefit of first parties, then and in that event said escrow shall be directed to deliver said deed to said second party. But in the event that second party shall fail, refuse or neglect to make any of said payments at the time and in the manner herein provided, for a period of more than thirty days from the date that any of the said payments are due according to the terms of this contract and the notes executed in evidence of said indebtedness, said deed shall be returned to first parties and this contract shall be held for naught and void in all its terms.''

The respondent failed to pay the taxes and irrigation charges due in the fall of 1921, and also failed to pay the instalment due on December 1, 1921, or within thirty days thereafter, the period of grace allowed under the agreement. Prior to the expiration of this period of grace, appellant notified the bank not to accept the payment due December 1, 1921, if offered after December 31, 1921, and substantially gave the same instructions to the bank on January 3, 1922. One of respondent's brothers, who was his agent, arrived in Boise on the night of January 4, 1922, and went to the bank on the next day to see about paying the instalment then past due. The bank told him that it would not accept any payment offered by him. Respondent's agent then met appellant and offered to pay him the amount then due, together with interest on deferred payments and taxes and irrigation assessments. Appellant refused to accept the payment. On the next day, which was January 6th, respondent's agent, together with his attorney, went to the bank and again sought to make the payment. The bank refused to accept the payment, and so did appellant. At that time, respondent's agent and appellant had another conversation, participated in by respondent's attorney, about which there is some conflict; and while the word ''rescind'' may have been used by appellant, it was not used in its technical, legal sense, and it was fully understood that appellant simply refused to accept the payment of the amount then past due, and claimed a forfeiture of the money paid.

On the same day, January 6th, appellant demanded and received from the bank the deed to the premises.

It appears that respondent left the farm in November, 1921. There is no evidence that respondent ever returned to the property, but there is evidence that another of respondent's brothers went on the farm about January 15, 1922, taking with him his trunk, bedding and food. The same evening appellant put the brother's belongings out of the house, and retained possession of the premises. Thereafter respondent demanded of appellant the repayment to him of the initial payment of $9,000, the taxes and irrigation charges paid by him, together with interest thereon, and for certain work and labor performed, less the rental value of the farm during the time it was occupied by himself. The demand was refused. Action was instituted and was tried to the court without a jury. Judgment was made and entered for the respondent according to the prayer of his complaint, from which this appeal is taken.

It must be borne in mind that this is not a suit in equity by a vendor for specific performance; it is not a suit by a purchaser, offering to pay the balance due, and asking the aid of a court of equity to compel the parties to carry out their agreement. For this reason, much of the argument and many of the numerous authorities are not helpful. On the contrary, this is a law action, brought by a purchaser admittedly in default in his payments, against a vendor not in default in any particular, to recover payments already made. The refusal to accept the payment then past due did not put the vendor in default; such act did not constitute a rescission or an offer to rescind. The act of the vendor was harsh, but it was authorized by the agreement, and might have been anticipated by the purchaser; and the purchaser, being in default, could not, by merely making a tender thereby put the vendor in default. It is true that, in this case, the payment offered by the purchaser was not more than five or six days overdue, but such a circumstance is of little if any consequence in an action at law to recover the payments already made. The parties fixed the time for making the payment. An offer of payment on

the following day would be no more a compliance with the exact terms of the agreement than such an offer made a greater time thereafter.

[1]   A provision that if the purchaser fails to make the stipulated payments at the time and in the manner provided, the deed shall be returned to the vendor, and the contract of sale "shall be held for naught and void in all its terms," makes time of the essence of the contract.   (6 R. C. L. 899; 39 Cyc. 1369; *Quinlan v. St. John,* 28 Wyo. 91, 201 Pac. 149, 203 Pac. 1088; *Pickens v. Campbell,* 104 Kan. 425, 179 Pac. 343; *Coughran v. Bigelow,* 9 Utah, 260, 34 Pac. 51; *Martin v. Morgan,* 87 Cal. 203, 22 Am. St. 240, 25 Pac. 350; *Grey v. Tubbs,* 43 Cal. 359.)   It is the intention of the parties that must govern.   Other than by the use of the exact words, it would be difficult to state more clearly that time was of the essence of the agreement than was done by the parties themselves.

The foregoing is taken *verbatim* from a memorandum written by Mr. Justice Wm. E. Lee prior to rehearing.

Respondent's theory is that he is entitled to recover moneys paid upon an instalment contract for the sale of real estate rescinded by the vendor and acquiesced in by the vendee. The action lies only "(1) where the contract has been rescinded by mutual consent and agreement of the parties, and there has been no default on either side; (2) where the vendor is unable or unwilling to perform the contract on his part; (3) where the vendor has been guilty of fraud in making the contract; (4) where, by the terms of the contract, it is left in the purchaser's power to rescind it by any act on his part, and he does so; and (5) where neither party is ready to complete the contract at the stipulated time, but each is in default. . . . . But where the contract is still incomplete a vendee will not be permitted to maintain an action to recover the money paid in part performance unless he is himself without fault."   (2 Warvelle on Vendors, 2d ed., p. 1092, sec. 918.)

See, also, 5 Thompson on Real Property, p. 441, sec. 4331; 27 R. C. L. 625; 39 Cyc. 1999 et seq., 2025 et seq.

[2]  Respondent was in default when his brother made the tender of January 5, 1922, and appellant was entitled to stand upon the terms of the contract, having notified the escrow-holder of his intention after respondent's default and before any tender was made. Respondent was without the state, and appellant had no knowledge of any other agent of respondent to whom notice might be given. Respondent, being already "at fault," could not, by making a tender, place himself in position to maintain an action for the return of the instalments of the purchase price theretofore paid by him. The record fails to show sufficient legal grounds for relief from the consequences of respondent's failure to make his instalment payment within the time fixed by the contract. His relief, if any, lies in equity for specific performance or other appropriate remedy.

The judgment is reversed, with costs to appellants.

Wm. E. Lee and Taylor, JJ., concur.

BUDGE, J., Dissenting.—The opinion hereinafter set out was prepared by the writer subsequent to the first submission of the above-entitled cause, concurred in by a majority of the court and filed with the clerk. Thereafter, on August 12, 1925, a petition for rehearing was filed and a reargument had. What is now the majority opinion was prepared by District Judge Varian, concurred in by a majority of the court, and filed with the clerk. In the circumstances I have concluded to file my views by adopting, with some additions, the opinion heretofore written and concurred in.

In this case there is no serious controversy as to the main facts. On March 23, 1920, appellants and respondent entered into a written contract for the sale of 93 acres of land near Boise, and certain personal property, for a consideration of $27,000. The purchase price was to be paid by respondent as follows: $9,000 cash, the receipt whereof was acknowledged on the date of the contract, $1,500 on or before December 1, 1921, and $3,000 on or before the first day of December of each succeeding year to and including 1924. These deferred payments were to be evidenced by promissory

notes drawing interest at the rate of seven per cent per annum, payable December 1st of each year. As the balance of the purchase price respondent assumed the payment of a mortgage on the premises to the Federal Land Bank of Spokane for $7,500, together with the interest accruing thereon after the date of the contract. Under the terms of the agreement the promissory notes, together with a warranty deed executed by appellants conveying the land to the respondent, the contract signed by the respective parties, and an escrow agreement likewise so signed, were placed in escrow in the First National Bank of Idaho, at Boise.

In the fall of 1921 respondent removed from the farm and arranged with his brother R. E. Butler to handle his affairs generally, and to meet his unpaid obligations, particularly his obligations with respect to the property the subject of the controversy herein. R. E. Butler came to Boise on the evening of January 4, 1922, and on the following day went to the First National Bank to make payment of the instalment of the principal represented by the $1,500 note and the interest falling due on all instalments on or before December 1, 1921. The cashier of the bank, when informed by respondent's brother that he was there for the purpose of making the above-mentioned payment, refused to accept it for the reason that the thirty days' grace provided in the contract had expired, and he had been instructed by appellant H. J. Cortner to refuse any payment tendered on the contract after the last day of grace. On the same day R. E. Butler made a like offer of payment to appellant H. J. Cortner and further offered to pay all taxes and assessments of whatever kind and nature against the property, the instalment due December 12, 1921, on the Federal Land Bank mortgage having been paid some time in December. This offer was refused with the statement that he had taken the contract down, that the Butlers had had their chance to comply with the contract and did not do so, and that appellants wanted possession of the premises. On January 6th, in company with a Mr. Hunter, one of respondent's attorneys, R. E. Butler again tendered to the bank for appellants the amount due December 1, 1921, to-

gether with interest, which tender was likewise refused. Some question was raised by the bank as to the necessity of making a tender in cash in lieu of a check, and arrangements were made whereby the cash was made available and was on hand in the First National Bank in the afternoon of that day. In the morning of the same day, while the respondent's brother and the attorney were at the bank, appellant H. J. Cortner came in and another conversation was had wherein a second offer was made to pay the instalment of principal, interest due and all assessments, and the statement made that the cash would be ready for appellants that afternoon. According to the testimony for respondent, Cortner then said that the contract had been rescinded, and the rights of the respondent under it forfeited. There is some controversy over the question of whether or not the word "rescinded" was used by Cortner, but I think that both parties understood that word to mean a termination of the contract by forfeiture. On December 31, 1921, and again on January 3, 1922, appellant H. J. Cortner had notified the bank not to accept any payments tendered after December 31, 1921, and on January 6th he made demand on the escrow-holder for the return of the deed, which, together with all of the escrow papers with the exception of the escrow contract, according to the testimony of the assistant cashier of the bank, was delivered to Cortner on that day. On January 15, 1922, Clark E. Butler, another of respondent's brothers, was in possession of the premises. While he was temporarily absent on the evening of the same day, appellants went to the premises, found the personal effects of Clark in the house, removed them on to the back porch, and refused to permit him to enter the house. On January 17th Clark Butler and one of respondent's attorneys went to the premises and demanded possession on behalf of respondent, which was refused. Thereafter this action was commenced and tried to the court without a jury. The trial resulted in a decree in which judgment was awarded in favor of respondent and against appellants, for the sum of $9,363.88, together with costs, and said sums were decreed to be a lien upon the real property which was ordered sold

to satisfy the judgment. From the decree so entered appellants prosecute this appeal.

Appellants specify ten assignments of error. I shall take up assignment No. 10 for the reason that it goes to the merits generally, and to respondent's right to the particular relief granted, and to pass upon it first will obviate the necessity of discussing many of the other assignments.

In assignment No. 10 it is insisted that the court erred in awarding judgment against appellants that respondent have and recover from appellants the sum of $9,363.88 and his necessary costs and disbursements, with legal interest thereon from and after the entry of the decree, and that said sums be declared to be a lien upon the premises described in the agreement, for the reason that the decree is not supported by the evidence and is against law, and that when respondent tendered payment of the instalment of principal and interest he was in default in respect to that payment and in the payment of taxes and water assessments then delinquent, because of which breach of the contract he may not recover payments previously made, in the absence of an express agreement giving that right. Appellants assert that respondent cannot recover payments made under the contract because he had breached the same by failing to comply exactly with the terms and conditions contained therein, and that this result would follow even in the absence from the contract of a stipulation for a forfeiture.

In *LaShonse v. Herrick,* 39 Ida. 67, 225 Pac. 1019, this court said: "A forfeiture is a harsh remedy, and will not be allowed except upon a clear proof of the breach of the terms of the contract upon which the forfeiture was to be declared." And in *Abercrombie v. Stoddard,* 39 Ida. 146, 228 Pac. 232, it is held that "forfeitures are not favored, either in law or in equity, and provisions for forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced. Courts are reluctant to declare and enforce a forfeiture if by any reasonable interpretation it can be avoided. (6 R. C. L. 906)." To the same effect see *Castleberry v. Hay,* 8 Ida. 670, 70 Pac. 1035; 5 Pomeroy's Equity Jurisprudence

(Equitable Remedies, 4th ed.), sec. 2238, p. 4997; 6 R. C. L. 943.

It would seem to me that under the facts disclosed by the record the appellants terminated the contract. If the termination was wrongful, or not within the terms of the contract, the respondent had the right to accept such termination and recover the payments made by him under the contract. If the proof is clear that there was a breach of the terms of the contract, and a forfeiture is provided for in that event, appellants would have the right to have such forfeiture enforced and to retain the payments.

Whether the parties in their contract did provide for a forfeiture must be ascertained from the terms of the contract, coupled with their acts and conduct thereunder. However, as the intent is to be gathered from the contract under a strict construction of its terms, if the intent is doubtful, or if by reasonable interpretation a forfeiture may be avoided, under the great weight of authority none will be enforced. It is not within the province of the court to make contracts, but to interpret them as made, and declare the rights and liabilities of the parties.

The contract herein involved is in some respects quite different from the ordinary contracts for the sale and purchase of real estate which have frequently received the consideration of this court. One provision deserving special attention is as follows:

"It is hereby mutually agreed that first party shall execute to second party a deed conveying the title of the said premises to second party, said deed to contain the usual covenants of warranty, and said deed is to be placed in escrow in the First National Bank of Boise City, Idaho, together with a copy of this contract and the notes hereinafter referred to, *and an escrow contract shall be executed upon the back of the envelope containing the same providing* that when second party has made all the payments as herein provided to said escrow for the use and benefit of first parties then and in that event said escrow shall be directed to deliver said deed to the second party. But in the event that second party shall fail, refuse or neglect to make any

of said payments at the time and in the manner herein provided, for a period of more than thirty days from the date that any of said payments are due according to the terms of this contract, and the notes executed in evidence of said indebtedness, said deed shall be returned to first parties, and this contract shall be held for naught and void in all its terms."

It will be observed that it is agreed in the contract that an escrow contract shall be executed which shall contain certain strict provisions of forfeiture. It therefore becomes necessary to examine the escrow contract for the purpose of ascertaining whether or not it contains the provisions recited in the contract for the sale of the land, keeping in mind that any forfeiture clause, if doubtful, is construed against the party for whose benefit it is made. Examining the escrow agreement written upon the back of the envelope and signed by the parties, it is found that it enumerates the various documents or papers that are contained in the envelope, and further provides that:

"The First National Bank escrow herein, is authorized to receive the principal of said notes together with 7% annual interest thereon, for the benefit of H. J. Cortner and Alice Cortner, and when said notes including principal and interest are fully paid . . . . the said escrow is authorized to deliver said deed to Ernest L. Butler. In the event that said notes or any of them, including principal or interest is not paid within thirty days after each is due, then said escrow is directed to return said deed to H. J. Cortner and Alice Cortner."

There is no clause in the escrow contract providing that in the event that respondent failed, refused or neglected to make the payments stipulated in the contract for a period of more than thirty days from the date that any of them are due, that the deed shall be returned to the appellants and the contract shall be held for naught and void in all its terms. It might have been the intention of the parties to have included in the escrow contract a stipulation that the failure to make payments for a period of more than thirty days from the date that any of them were due would

render the contract void in all its terms, but as it was, they certainly did not include such a provision in the escrow contract. Stipulations for forfeiture are for the benefit of the vendor and may be waived. In the instant case it is stipulated between the parties that the escrow contract to be thereafter executed shall provide for a strict forfeiture. In view of this express stipulation I know of no reason why a forfeiture should be written into the escrow agreement if the parties themselves did not do so. By such omission the escrow contract modifies the forfeiture clause contemplated by the contract of sale.

Moreover, a holding that there is a forfeiture clause in the contract of sale independent of the escrow contract still leaves open the question whether or not such forfeiture clause is self-executing. As stated in *Kemmerer v. Title & Trust Co.,* 90 Or. 137, 175 Pac. 865, a provision for the forfeiture of payments will not be construed to be self-executing unless unequivocal language is used showing plainly and clearly that such was the intention of the parties. In that case it is held that the clause "Time is the essence of this agreement, and upon the failure of the purchaser to comply with the terms hereof . . . . said deposit shall be forfeited as liquidated damages" is not self-executing. The language of the instant agreement is practically identical with that quoted above, and I think a similar holding should be made in this case, to the extent that as appellants did not withdraw the deed from escrow until after tender had been made by respondent, it should be held that they had so far waived the forfeiture clause that it had not yet been put into operation.

Assignment No. 10 also raises the point that the court erred when it ordered, adjudged and decreed that the money found to be due from appellants to respondent is a lien upon the property described in the decree, it "not being supported by the evidence and against the law." This same question is raised in other assignments, but I think it may be disposed of here. Appellants' refusal to accept the offer made January 5th of principal and interest due, together with

the offer of payment of water assessments and taxes then owing, and their further refusal on January 6th of the second offer, their statement that the contract was at an end, their withdrawal of the escrow papers, and the additional facts that surreptitiously, in the night-time, they went into possession of the premises, and on January 17th refused to re-deliver possession, were such acts and conduct as amounted to an abandonment of the contract and a refusal to comply with its terms and conditions. If I am correct in my views, before expressed, as to forfeiture, the respondent had the right to accept such abandonment as an offer of rescission. In *Maffet v. Oregon & C. R. Co.*, 46 Or. 443, 80 Pac. 489, the chief justice announces the following principles of law applicable to the facts in the instant case: "When a vendor abandons his contract to convey, the vendee, in his choice of remedies, may elect to rescind the contract, and thereupon maintain an action at law to recover what he has paid thereon as money had and received. Thus it is that an abandonment by one party may be treated as a proposition to rescind by the other, and thereupon he may also abandon, and thus arrive at a mutual agreement to rescind, and the law so treats the correlative acts of the parties." In the case at bar respondent had the right to accept the offer of rescission and is entitled to a lien against the premises for the payment of the judgment recovered upon the theory that appellant's abandonment of, or refusal to perform, the contract, worked a failure of consideration for the money paid. (See *Montgomery v. Meyerstein*, 186 Cal. 459, 199 Pac. 800.)

In finding II the court found that respondent expended labor and money in permanent improvements upon the premises in the sum of $150, and included that sum with interest in the amount for which judgment was awarded. There is no competent evidence to support this finding. This $150 and interest should be deducted from the amount for which judgment was given the respondent.

The majority opinion rests upon the conclusion, which is not supported by the record, that respondent was in default

and breached the contract and is therefore not entitled to recover since the action is one at law and not in equity, and holds further that respondent's relief, if any, lies in equity for specific performance or other appropriate remedy. If I understand the conclusion reached by the majority the action is dismissed, although it is conceded that respondent has a remedy in equity.

In other words, had respondent brought his action for specific performance, relief would have been awarded him, but having mistaken his remedy he is denied any relief. To my mind there is no warrant in law or in equity upholding the majority view upon this point. Conceding but not admitting that respondent mistook his remedy, the situation is analogous to that arising in *Zellner v. Wassman,* 184 Cal. 80, 193 Pac. 84, where in the course of its opinion that court said:

"It is not essential that a complaint state a cause of action for the relief which plaintiff seeks, provided the facts stated show some right of recovery, and a party cannot be thrown out of court merely because he may have misconceived the form of relief to which he is entitled. (*Walsh v. McKeen,* 75 Cal. 519, 17 Pac. 673; *Rogers v. Duhart,* 97 Cal. 500, 32 Pac. 570; *Brown v. Irrig. Dist.,* 183 Cal. 186, 190 Pac. 797.) There being but one form of civil action in this state, a plaintiff may recover if his complaint 'states any cause of action entitling the plaintiff to any relief at law or in equity.' (*Hayden v. Collins,* 1 Cal. App. 259, 261, 81 Pac. 1120.)"

In *Rauh v. Oliver,* 10 Ida. 3, 77 Pac. 20, it is said that under our code of procedure technicalities of pleading under the common law have been dispensed with, and a plaintiff need only state his cause of action in ordinary and concise language, and when this has been done, a plaintiff can only be sent out of court when he is entitled to no relief, either at law or in equity. To the same effect see *Casady v. Scott,* 40 Ida. 137, 237 Pac. 415; *Swinehart v. Turner,* 38 Ida. 602, 224 Pac. 74; *Smith v. Rader,* 31 Ida. 423, 173 Pac. 970; *Bates v. Capital State Bank,* 18 Ida. 429, 110 Pac. 277; *First Nat. Bank v. Sampson,* 7 Ida. 564, 64 Pac. 890; *Carter*

*v. Wann*, 6 Ida. 556, 57 Pac. 314; *Brown v. Bledsoe*, 1 Ida. 746.

The judgment of the court below, as modified, should be affirmed.

William A. Lee, C. J., concurs in this dissenting opinion.