299 P.2d 97

Sam IRVINE, Respondent and Cross-Appellant,

v.

Leland PERRY and Liberty National Insurance Co., Respondents; Western Hospital Association and National Surety Company, Respondents; R. L. Longanecker and The Aetna Casualty & Surety Company, Appellants and Cross-Respondents; Bergen A. Rapp, Respondent; H. Don Moseley, Respondent.

No. 8219.

Supreme Court of Idaho.

June 27, 1956.

Rehearing Denied July 19, 1956.

Richard McFadden, St. Maries, J. Ward Arney, Coeur d'Alene, for appellants.

Paul W. Hyatt, Lewiston, for respondents.

Brown & Peacock of Kellogg, H. J. Hull & Sons, Wallace, and Carver, McClenahan & Greenfield, Boise, amici curiae.

ANDERSON, Justice.

Subsequent to the first opinion filed July 5, 1955, rehearing was had on May 14, 1956. The first opinion is withdrawn and the following substituted.

September 15, 1948, the claimant, then 32 years of age, received a personal injury to his back, caused by an accident arising out of and in the course of his employment with the employer, Leland Perry. The employer at the time had a hospital contract with Western Hospital Association, a corporation which then was operating St. Maries Hospital under a joint venture with Dr. H. Don Moseley and Dr. Bergen A. Rapp, who rendered medical and hospital services for the Association under its hospital contract. Irvine was hospitalized at the St. Maries Hospital for 100 days under the hospital contract. His injury resulted in paralysis of the lower abdomen and the lower extremities, causing him to become a paraplegic and totally and permanently disabled, and, typical of such cases, he has "pressure sores." He also has acute chronic bladder infection, a severe concomitant. On Christmas eve, 1948, Irvine was discharged from the hospital and was confined thereafter to his bed at home until June, 1949, when he was placed in a wheel chair; and he continued to receive and take certain medicines and to use certain medical supplies furnished by the association. He has required nursing ever since the injury. About April 1, 1950, appellant Dr. R. L.

Longanecker purchased the St. Maries Hospital and assumed the hospital contract involved in this case.

Some time after April 1, 1950, Irvine's account at the drug store was cut off, and the nurses at the hospital gave him fewer supplies, and Irvine had to pay for more supplies himself. November 1, 1950, the hospital canceled, or attempted cancellation of, all its existing hospital contracts.

By March, 1951, the "pressure sores" had eaten into the urinary tract, and in April, 1951, claimant underwent an operation to restore urinary flow, and has since been treated for urinary infections on occasion. After the claimant's discharge from the hospital, he received post-operative professional care and attention until September, 1953, at which time Dr. Rapp, Longanecker's agent and representative, refused to pay for medicines. September 26, 1953, claimant's wife wrote the Industrial Accident Board, which letter was filed September 28, 1953, stating that the doctors and the contract hospital had not supplied claimant with medical treatment or with medicines in accordance with terms of the hospital contract, and requested a hearing and an award for money claimant had been forced to expend, and a determination of responsibility for further medical treatment. November 23, 1953, a formal petition was filed by claimant, claiming he had spent approximately $50 a month for medical and similar services and materials with-

in the terms of the hospital contract, and that his wife had been compelled to act as his nurse and spend at least three hours a day in taking care of him, for which he is entitled to reasonable compensation.

Defendant Longanecker, by his answer, admitted the injury, the hospital contract and its assignment, and alleged that it was approved by the Industrial Accident Board. He denied generally the other allegations of the petition, and set up as defenses that the claimant, under the terms of the hospital contract, was entitled to reasonable medical and surgical care only for a reasonable time after his injury, and that such time has expired; that more than four years have elapsed since the injury without an award being made to claimant; that he is therefore barred under I.C. Section 72-607 from seeking relief; that claimant is not entitled to nursing, other than in the hospital; and that the contract excludes hospital care for minor conditions, such as the plaintiff now has; and that his condition is incurable and has been for some time past.

An examination by Dr. Verne E. Cressey, made April 17, 1954, disclosed that claimant had huge trophic ulcers, unhealed but healing; that at one time those ulcers invaded clear through the urinary bladder, but were surgically corrected in part. In the opinion of Dr. Cressey, claimant requires per month, antibiotics for the urinary infection costing a minimum of $15, dressings costing $30 and other sundry items costing $5, which totals a minimum of $50 a month.

The Board found August 10, 1954, that as a result of said accident Irvine has a chronic urinary bladder infection with recurrent acute attacks, with the probability of recurrence thereof for life; medical science can do nothing to restore the muscle tone, and it is almost an inevitable complication in the case of any paraplegic to have recurrence of pressure sores; there is no known surgical procedure that will cure his condition; claimant has received and is receiving total and permanent disability compensation from the employer's surety; neither the employer, Leland Perry, nor his surety, Liberty National Insurance Co., raised any question as to their liability to pay compensation for permanent total disability to Irvine resulting from his injury.

The Industrial Accident Board denied claimant any award for medical supplies between April 1, 1950, and September 15, 1953, on the ground that no demand was made during that period. The Board awarded Irvine $272.50 for the period from September 15, 1953, to April 23, 1954, from R. L. Longanecker and his surety, The Aetna Casualty & Surety Company, for medical supplies, but denied any allowance for practical nursing at home by claimant's wife.

Defendants Dr. Longanecker and The Aetna Casualty & Surety Company appealed, alleging the Board erred in not find-

ing Irvine's condition incurable and static and in making him any further allowance.

Claimant cross-appealed, alleging that the Board erred in denying him a refund for medical supplies and materials which he had purchased after refusal of the defendants, at the rate of $50 per month from April 1, 1950, to September 15, 1953, and in failing to award a reasonable amount for practical nursing by his wife from April 1, 1952. None of the other parties named in the title of this case has appealed.

The main questions involved in this appeal are, First, the construction of the hospital contract entered into in this case and the liability thereunder; second, what is a reasonable time under the statute, I.C. Section 72–307, and the hospital contract, within which claimant is entitled to receive medical care, medicine and supplies? Third, is claimant's wife entitled to receive pay for home nursing?

 Claimant is not asserting any change of condition, nor asking for a modification of an award formally made, as is provided in I.C. Section 72–607, but seeks a determination in the first instance of his right to compensation, including expense of medical and similar services.

His condition from the time of the injury has at all times been, and now is, permanent, requiring continual medical treatment. Flock ·v. J. C. Palumbo Fruit Co., 63 Idaho 220, 118 P.2d 707. Hence I.C. Section 72–607 has no application to the situation.

The Industrial Accident Board was correct in holding:

"* · * * the four-year limitation thereof does not apply to medical attendance, as defined in sec. 72–307, in a case of total and permanent disability, as defined in sec. 72–311, particularly when the original injury causes continuous or recurrent symptoms which require medical attendance."

Idaho Code, § 72–307 provides in part:

"The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches and apparatus, as may be required or be requested by the employee immediately after an injury, and *for a reasonable time thereafter.* If the employer fails to provide the same, the injured employee may do so at the expense of the employer." (Emphasis added.)

Section 72–308 in part provides:

"Nothing in this act shall be construed as preventing employers and workmen from waiving the provisions of section 72–307 and entering into mutual contracts or agreements providing for hospital benefits and accommodations to be furnished to the employee.

"Such hospital contracts or agreements must provide for medical, hos-

pital and surgical attendance for such employee for sickness contracted during the employment (except venereal diseases and sickness as a result of intoxication), as well as for injuries received arising out of and in the course of the employment. * * *"

The hospital contract between Western Hospital Association and Leland Perry, among other things, provided:

"Now, therefore, it is mutually agreed by and between the parties hereto as follows, to-wit:

"The said Western Hospital Association, party of the first part, agrees to provide to each and every person employed by the party of the second part in the occupations and locations above mentioned, who shall elect to receive the benefits of this Agreement and shall contribute to the Association hereunder, all necessary and reasonable medical, surgical and hospital attendance, medicines, nursing, crutches and apparatus, by its Surgeons and in the above mentioned hospitals: * * *

"Such medical and surgical care shall be held to include such reasonable care by the Association's surgeons as may be required immediately after the development of a sickness or after an injury *and continuously for a reasonable time thereafter,* and such hospital attendance and nursing shall be held to include hospital care and *nursing in the above hospital only,* for such conditions and for such length of time as may be reasonably necessary for the proper treatment of the conditions presented, but not to include treatment or hospital care for conditions existing before the employee became a contributor hereunder, nor room and board for minor, ambulatory or convalescent conditions while hospital treatment is not required; and the care of contagious diseases shall be held to include reasonable medical services in accommodations furnished by the patient or his employer, but nothing herein shall be held to require the Association to provide artificial limbs or other prosthetic appliances, or the services of a dentist, or any service or care for pregnancy or its complications, or for cases of insanity or incurable conditions." (Emphasis added.)

This court has stated:

"The lodestar of liberal construction of the Workmen's Compensation Law [requires] if possible, the rehabilitation of injured employes and correct treatment of them * * *" Flock v. J. C. Palumbo Fruit Co., 63 Idaho 220, 118 P.2d 707. See also Long v. Brown, 64 Idaho 39, 128 P.2d 754.

Idaho Code section 72–308 requires that the hospital contract must pro-

vide for medical, hospital *and* surgical attendance, indicating these are three different classifications.

The liability of the employer is statutory and primary, and I.C. § 72–307 binds the employer until he has discharged his liability by contract under I.C. § 72–308 or by performance. The liability of the contracting party is contractual and secondary, and is limited to the coverage provided for in the contract. While the Industrial Accident Board had a legal right to disapprove any contract which did not insure to the employee the equivalent of that given him by the statute, the fact is that in this case the Board did approve a contract defining and limiting the liability of the contracting party.

The approved contract definitely fixes and limits the liability of the contracting hospital. To the extent, but only to the extent, that such contract gives to the employee the benefits granted to him by the statute, it is a substitute for the employer's statutory liability. The employee, by his waiver of statutory rights, accepts the contract of the contracting hospital only to the extent that it gives to him the rights afforded by the statute. In other respects, the statutory liability of the employer remains unimpaired and unreduced.

In the case now before us, the hospital contract specifically provides for medical, hospital, and surgical attendance (as required by I.C. § 72–308) immediately after an injury, and continuously for a reasonable time thereafter. The contract limits the hospital attendance and nursing to hospital care and nursing in the hospitals designated in the contract, and for such conditions and for such length of time as may be reasonably necessary for the proper treatment of the conditions presented.

We construe the hospital contract in this case to provide for medicine and medical supplies for a reasonable length of time, but not to provide for home nursing services. These, not having been contracted for, would remain the statutory responsibility of the employer.

In determining what is a *reasonable time* for claimant to receive medical treatment and supplies, we look to the statute, the contract and the facts and circumstances of the particular case. 12 Am.Jur., Contracts, Sec. 299, p. 855.

Need for medical treatment is not incompatible with a status of "total and permanent disability," and such may be allowed in connection with an award for permanent and total disability where necessary. Industrial Indemnity Exchange v. Industrial Accident Commission, 90 Cal.App.2d 99, 202 P.2d 850.

The facts in the case of W. J. Newman Co. v. Industrial Commission, 353 Ill. 190, 187 N.E. 137, 88 A.L.R. 1188, are nearly identical with those in the case be-

fore us. The Illinois statute at the time of that case provided for all necessary medical, surgical and hospital services after an injury, limited, however, to that which was reasonably required to cure or relieve from the effects of the injury. While our statute does not contain "or relieve," nevertheless the reasoning in the Newman case is applicable in the case here under consideration. It says:

"* * * furnishing of medical, surgical, and hospital services to injured employee must be regarded as payment of compensation."

Schneider on Workmen's Compensation, Vol. 10, p. 137, states:

"A workman, whose injuries have been declared permanent or fixed, may still have such beneficial and necessary medical care as will relieve him from pain and other injurious effects of the injury, subject to any statutory limitations imposed upon the furnishing of medical, surgical and hospital services and care."

In Meuse's Case, 262 Mass. 95, 159 N.E. 636, 637, the employee had his spinal cord severed (as did Irvine) and complete paralysis below the waist. The court in its opinion stated:

"The fact that no medical treatment will reduce the employee's incapacity for work or restore the functional use of his legs did not require the board in

the exercise of its discretion to revoke its order for payment, or make improper its order that the payments be continued."

In a new appeal in Meuse's Case, 270 Mass. 29, 169 N.E. 517, to require payments to be continued for hospital and medical services after the statutory period for payment of compensation, the court held it could not be required under Massachusetts law. In the Irvine case we are not confronted with that issue, as the Industrial Accident Board has awarded compensation payments to continue for the life of the claimant.

The case of Wanke v. Ziebarth Construction Company, 69 Idaho 64, 202 P.2d 384, 393, cited by appellant Longanecker, is distinguishable from the present, as in that case

"* * * the record does not show claimant's injuries required *continuous* medical treatment and care from the *date of the accident, as was apparently* true in Flock v. J. C. Palumbo Fruit Co., 63 Idaho 220, 118 P.2d 707. On the contrary, the record shows and the Board found claimant 'was surgically healed of his injuries,' though left in a condition of permanent partial disability."

The Board denied Irvine's claim for medical supplies for the period from April, 1950, to September 15, 1953, on the ground

the claimant had made no demand for them on appellant Longanecker. It further found claimant made demand for such supplies September 15, 1953, on Dr. Rapp as agent for Dr. Longanecker. The Board ordered that claimant be reimbursed

"* * * for necessary medicine and medical supplies required under hospital contract to be furnished him for the period September 15, 1953, to April 23, 1954, and which by reason of Longanecker's own denial of liability, claimant was compelled to obtain at his own expense."

The Industrial Accident Board found as a fact that Irvine would probably continue to require daily home treatment as an outpatient of the hospital, under the hospital physicians' general supervision; also that from time to time he will require hospitalization.

Article 5, § 9, of the Idaho Constitution provides that on appeal to the Supreme Court from any order of the Industrial Accident Board, the court shall be limited to a review of questions of law.

The Board ruled that the hospital contractor's liability is both continuing and contingent for the duration of claimant's life; that R. L. Longanecker, as hospital contractor, is liable to Irvine for the duration of his life, for necessary and reasonable medical and surgical attendance and kindred and incidental services and necessary medicine and supplies. If the doctor fails to furnish them, he and The Aetna Casualty & Surety Company are jointly, and each is severally, liable to claimant for the value thereof, the surety's liability being limited by the amount of its bond of $5,000.

It cannot be said that care provided for the purpose of remedying recurrent body sores which occasion great discomfort, and also obstructions of the bodily functions, is unproductive in the restorative objectives of the Workmen's Compensation Law. The predisposition to such sores and obstructions to bodily functions is not a physical condition, as described in the contract, even though it may be permanent, and the recurrence of the sores and their by-products very definitely are physical conditions which can be reduced and even eliminated in the patient for periods of time, and, in our judgment, the right to care for such recurrences is equal to the right to care immediately following the accident, because both are necessitated as a direct result of the accident. The contract discusses *incurable conditions,* not *incurable predispositions,* as argued by counsel for appellants and cross-respondents.

Whenever the association, now defunct, and its successors failed, refused, or placed themselves in circumstances where it was impossible to provide for care for which they contracted, the injured workman may obtain the care elsewhere—as

claimant did upon their refusal April 1, 1950—whether it be from another hospital or another doctor, and the association or its successors must be held responsible for such care to the same extent as if they still maintained and operated the hospital.

 No man is "surgically healed" so long as he has a predisposition to the abject miseries of body sores and serious impairment of bodily functions. So long as this predisposition surely and inescapably subjects the accident victim to such tortures, he is certainly entitled to the modest consideration of proper medication, bandages and the proper application of both.

The following, pertaining to reasonable time, appears in 12 Am.Jur., Contracts, Sec. 299, p. 855:

"What is a reasonable time within which an act is to be performed when a contract is silent upon the subject depends on the subject matter of the contract, the situation of the parties, and the circumstances attending the performance * * *."

Each case must be judged on its own peculiar facts and circumstances as to what is a reasonable time. The Board did not abuse its discretion in fixing it at life in this case. However, generally a reasonable time would be as long as the condition exists rather than stating for the rest of his life.

The matter is remanded to the Board, with directions to determine and allow reasonable expenses for necessary and proper medical, surgical, and other treatment, and hospital services, medicines, crutches and apparatus as may be required by claimant, injured employee, for a reasonable time after the injury, i. e., as long as the condition continues or recurs, which may be for his lifetime, the expense of which plaintiff could account for quarterly, for reimbursement purposes, or the same be otherwise paid, as the Board may order.

As to other matters, the order is affirmed.

Costs to respondent and cross-appellant Irvine.

BAKER, McQUADE and SPEAR, D. JJ., concur.

TAYLOR, Chief Justice (dissenting).

Liability under a hospital contract is described and limited by the contract. The employer's liability is fixed by statute, § 72–307 I.C., so that when the employer enters into a contract of employment, the statute is read into it and becomes a part of the contract of employment. Neither the hospital nor the doctor, agreeing to furnish medical and hospital service, is a party to the contract of employment. Neither assumes any obligation, statutory or otherwise, arising out of that relationship. The hospital contract is expressly authorized by the statute. § 72–308 I.C. This section expressly provides that, as to the hospital

or doctor, the employer and employee waive the provisions of § 72–307 I.C. The second paragraph of § 72–308 provides what the hospital contract must contain. That is the only provision of the Workmen's Compensation Law which can be read into that contract. No contention is made here that the contract does not meet the requirements of the statute. The contention that the requirements of § 72–307 I.C. should be read into the hospital contract, and can be looked to to determine the liability thereunder, must be described as no less than absurd for two reasons: first, § 72–307, by its own terms, is limited to the liability of "the employer"; second, by the waiver provision in § 72–308 the legislature has expressly declared that the provisions of § 72–307 are not to be regarded as a part of such contract. The majority opinion recognizes that Dr. Longanecker's liability is limited by the contract. Accordingly, the majority agrees that home nursing cannot be awarded because not covered by the contract. But still, the majority looks to § 72–307 as well as the contract, and to care "necessitated as a direct result of the accident", to support the conclusion of liability for continued medical and hospital care.

The hospital contract, among other things, provides: "but nothing herein shall be held to require the association to provide * * * any service or care for * * incurable conditions."

The majority argues that the recurrent pressure sores, urinary flare-ups, and other interruptions of bodily function, though inevitable, are not incurable because they can be temporarily reduced or even eliminated for periods of time; that it is the predisposition to such conditions that is incurable. So a distinction is to be drawn between "incurable predispositions" and the "incurable conditions" ruled out by the contract. To me such argument is entirely specious. It is an attempt to draw a distinction without a difference. The claimant's condition has long since become static. His condition is admittedly incurable. The services and care periodically required for these periodic eruptions are nothing more nor less than "service or care for * * * incurable conditions" contemplated by the contract and in plain and unambiguous terms eliminated from the services and care therein agreed to be rendered.

Here a liability to care for incurable conditions is imposed by the majority in spite of the contract to the contrary. We had assumed that no principle of law was settled with more finality, or more universally accepted by the courts, than that which declares the plain provisions of a contract must be accepted, and that courts are not at liberty to make or modify contracts for the parties. So fundamental is this right of freedom of contract, that it was made the object of protection by both the federal, Art. 1, § 10, and state, Art. 1, § 16, constitutions. Not even the legislature could thus violate this contract and impose a liability which the parties contracted against.

It is idle to talk of the obligation of industry to take care of its injured. That is not the question here. All the parties to this appeal and the Industrial Accident Board as well, recognize that the employer and his surety have been released from all liability by reason of this contract. No claim is asserted against them. Here the liability is being imposed upon the doctor who agreed to render medical service to the injured employee, within the limits of the contract. In such a situation it is beside the point to call attention to the admittedly pathetic and urgent need of the claimant for such service. No matter how sore the need, nor how pressing the circumstances, in no case is the court justified in violating the fundamental law. It is the court's highest purpose to preserve that law inviolate.

If the Workmen's Compensation Law in respect to hospital contracts needs revision in order to provide protection and relief in cases such as this, it is the prerogative of the legislature, not of this court, to amend the law.

The cause should be sent back to the board with instructions to determine what is a reasonable time within which the doctor is required to furnish medical, surgical and hospital care and nursing, in the hospital, as provided by the contract, and to limit its award to the period between the accident and the time when claimant's condition became static and incurable.