878 P.2d 180

**Richard UJDUR, Plaintiff–Respondent,**

v.

**Wesley THOMPSON, Defendant–Appellant.**

**No. 20081.**

Court of Appeals of Idaho.

April 6, 1994.

Rehearing Denied May 17, 1994.

Simpson, Gauchay & Gardner, Idaho Falls, for defendant-appellant. Steven A. Gardner, argued.

Hopkins, French, Crockett, Springer & Hoopes, Idaho Falls, for plaintiff-respondent. David H. Shipman, argued.

WALTERS, Chief Judge.

This appeal involves the performance of a written agreement entered to settle disputed rights between joint purchasers of real property. The agreement essentially provided for one purchaser to buy out the interest of the other within a specific period of time. The question presented for our review is whether the timely tender of an insufficient payment amount, followed by an untimely tender of the full payment amount, constituted substantial performance under the agreement. Because we conclude that it did not, we affirm the decision of the district court.

## Facts

The following facts, which are supported by the record, are not disputed. On August 1, 1989, Richard Ujdur and Wesley Thompson entered into a sales contract to jointly purchase approximately 110 acres of land in Lemhi County, Idaho, from a bank.[1] Thompson and Ujdur agreed to purchase the land as tenants in common, in equal undivided shares, with Ujdur advancing a $17,000 down payment to the bank. The balance of the contract price was to be paid in five annual payments of $10,054.59. A dispute arose between Ujdur and Thompson over the latter's failure to make equal payments on the contract. In October, 1990, Ujdur filed an action for breach of contract, alleging that Thompson had failed to pay any portion of the annual contract payments to the bank. Ujdur also sought to enforce an alleged oral

1. Thompson previously owned the land, but had given the Bank of Commerce a deed in lieu of foreclosure, reserving the right to redeem the property within a certain period of time.

promise by Thompson to assign Ujdur his contract rights.

On the eve of trial, scheduled for April 9, 1992, the parties reached a settlement. Their written settlement agreement, filed with the district court, stated the following:

1. The defendant [Thompson] shall have through and including the cutoff date to pay $37,681.20,[2] plus interest, as defined below, to plaintiff [Ujdur]. . . .

Such interest through and including April 9, 1992, is $5,719.79 with $9.29 accruing per day beginning April 10, 1992. . . .

.    .    .    .    .

3. At the time of such payment plaintiff [Ujdur] shall deliver to defendant [Thompson] the following documents:

a. [Ujdur's Quitclaim Deed to the property].

b. Any such other documents necessary to transfer [Ujdur's] interest in said property to [Thompson].

4. If [Thompson] does not pay said amount by or on the cutoff date, [Thompson] shall deliver to [Ujdur] his quitclaim deed to the property stated above. . . . [Thompson] shall have previously signed such quitclaim deed to be held at the Court's discretion. [Ujdur] shall, at such time, in exchange for such quitclaim deed, present [Thompson] a document wherein [Ujdur] assumes [Thompson's] rights and duties under the August 1, 1989 Sales Contract and [Thompson] assigns his rights and duties, including any income generated from the property, under said contract, to [Ujdur]. [Ujdur] shall also, in such document, indemnify [Thompson] against the obligations under and in the said contract. . . .

The parties' settlement agreement expressly defined the "cutoff date" to be July 8, 1992. It further provided that on July 9, 1992, Ujdur would sign a motion to dismiss the lawsuit with prejudice.

On July 8, 1992, counsel for Thompson delivered a letter to Udjur's attorney stating that he held "sufficient funds to pay out Mr.

Ujdur pursuant to the settlement negotiation agreement" in the amount of $38,517.30 which, he explained, was calculated to include accumulated interest due. However, this sum was evidently calculated in error and was $5,719.79 short of the amount actually required by the agreement. Ujdur did not accept the tender. Although the parties' attorneys acknowledged and discussed the deficiency of the offered payment later that day, Thompson neither tendered, nor promised to tender, payment in the correct amount.

The next day, July 9, Thompson tendered the correct amount and asked for a quitclaim deed from Ujdur. Ujdur again refused to accept the payment, this time on the ground of untimeliness. Ujdur demanded that Thompson deliver a quitclaim deed for the property. When Thompson refused to deliver the deed, the parties brought the matter before the district court.

At the hearing before the district court, Thompson argued that his actions taken on July 8 and July 9 constituted substantial performance under paragraph 1 of the settlement agreement, and that Ujdur was thus obligated to accept the July 9 payment and deliver a quitclaim deed as provided for in paragraph 3 of the agreement. Unpersuaded by Thompson's argument, the district court found that the parties had bargained for a strict construction of the timeliness requirement. The court further found that Ujdur had not accepted Thompson's deficient payment tendered on July 8, and that Thompson's late tender of payment, although made in good faith, did not constitute substantial performance. The court accordingly entered an order requiring Thompson to deliver his quitclaim deed to Ujdur, as provided for in the agreement. Thompson appeals from that order.

## Issue on Appeal

The sole issue raised by Thompson on appeal is whether the district court erred in failing to hold that Thompson's actions taken

2. This figure was arrived at by calculating certain payments made by Ujdur on the contract between Bank of Commerce as seller, and Ujdur and Thompson as purchasers, plus property taxes.

on July 8 and 9 constituted substantial performance under the agreement.

### a. Timeliness.

■ It is well settled that where no time for performance is established in the agreement, the law implies that performance must occur within a reasonable time. *Irvine v. Perry,* 78 Idaho 132, 299 P.2d 97 (1956); *McFarland v. Joint School Dist. No. 365 in Elmore and Owyhee Counties,* 108 Idaho 519, 700 P.2d 141 (Ct.App.1985). However, a different rule applies to the parties' contract where time is deemed, expressly or implicitly, to be "of the essence." Thus, where the parties make time of the essence in setting a deadline for payment, strict compliance with such deadline is required. *Butler v. Cortner,* 42 Idaho 302, 246 P. 314 (1926).

■ In this case, the parties expressly agreed to a "cutoff date" of July 8, 1992. Their agreement provided that Thompson would have "through and including the cutoff date" to pay Ujdur a specified amount, and that "If [Thompson] does not pay said amount by or on the cutoff date, [Thompson] shall deliver to [Ujdur] his quitclaim deed." We conclude, as did the district court, that by this language the parties manifested their intent to make time of the essence of their agreement. *Accord Butler,* 42 Idaho at 309, 246 P. at 315; *see also Southern v. Southern,* 92 Idaho 180, 438 P.2d 925 (1968) (in option contract, time stated for exercise of an option is of the essence, and no express provision stating that time "is of the essence" need be contained therein). Consequently, Thompson's tender of payment made *after* the July 8 cutoff date may not be considered in determining whether there was substantial performance. *See Schneider v. Dumbarton Developers, Inc.,* 767 F.2d 1007 (D.C.Cir.1985).

### b. Substantial Performance.

■ Thompson argues that his tender on July 8 of nearly ninety-percent of the required payment constituted substantial performance under the agreement, and that Ujdur was therefore required to accept the payment and deliver the quitclaim deed. We disagree.

■ "Substantial performance" is performance which, despite deviation or omission, provides the important and essential benefits of the contract. *Mountain Restaurant Corporation v. ParkCenter Mall Associates,* 122 Idaho 261, 833 P.2d 119 (Ct.App. 1992); *see also Nelson v. Hazel,* 91 Idaho 850, 433 P.2d 120 (1967). Substantial performance is the antithesis of material breach. Thus, there can be no "substantial performance" where the part unperformed touches the fundamental purpose of the contract and defeats the object of the parties entering into the contract. *See Ervin Construction Co. v. Van Orden,* 125 Idaho 695, 699, 874 P.2d 506, 510 (1993); *Enterprise, Inc. v. Nampa City,* 96 Idaho 734, 536 P.2d 729 (1975). Although the doctrine of substantial performance most often applies to construction contracts, it is not necessarily limited to that context and may apply to any contract. 3A CORBIN ON CONTRACTS § 701 (1960) (Supp.1992); *see Weed v. Idaho Copper Co.,* 51 Idaho 737, 10 P.2d 613 (1932) (doctrine applied to contract for purely personal services). Whether a particular tender of performance is "substantial" will depend on the facts of the case. *Ervin Construction Co.,* 125 Idaho at 699, 874 P.2d at 510; *Eldred v. C.L. Folkman Company,* 93 Idaho 131, 456 P.2d 775 (1969); *Mountain Restaurant,* 122 Idaho at 265, 833 P.2d at 122. However, it has long been recognized that,

> Where the line is to be drawn between the important and the trivial cannot be settled by a formula. In the nature of the case, precise boundaries are impossible. The same omission may take on one aspect or another according to its setting.... The question is one of degree, to be answered, if there is doubt, by the triers of fact, and, if the inferences are certain, by the judges of the law.

*Jacob & Youngs v. Kent,* 230 N.Y. 239, 129 N.E. 889, 891 (1921) (Cardozo, J.), *cited in Schneider,* 767 F.2d at 1013; *see also Eldred,* 93 Idaho at 133, 456 P.2d at 777.

Returning to the facts of the case at hand, we note again that Thompson's offer of payment on July 8, 1992, was $5,719.79 less than the amount required by the settlement agreement. This deficiency in performance,

10

although innocent, was not minor. There can be no question that *full* payment was a fundamental condition of Ujdur's duty to quitclaim his interest to Thompson and dismiss the underlying lawsuit against him. Payment of less than the agreed amount was a defect going to the very heart of the parties' agreement. Consequently, Ujdur was under no obligation to accept the tendered performance or to deliver his quitclaim deed to Thompson. To the contrary, because he had not paid Ujdur within the time permitted, Thompson was required under paragraph 4 of the agreement to deliver his quitclaim deed to Ujdur.

### Conclusion

Based upon the foregoing, we conclude that the district court correctly held that Thompson had not substantially performed under the agreement within the time allotted. We therefore affirm the court's order directing Thompson to deliver his quitclaim deed to Ujdur.

Because Ujdur has prevailed in this appeal, he is entitled to an award of his costs under I.A.R. 40. Pursuant to I.A.R. 41 and I.C. § 12–120(3), he is also entitled to an award of reasonable attorney fees.

LANSING and PERRY, JJ., concur.